Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

January 30, 2017

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Joaquin Archivaldo Guzman Loera, 09 CR 466 (BMC)**

Your Honor:

We write in response to the Court's order of January 25, 2017, indicating the Court's inclination to have Mr. Guzman appear by "video transmission only in order to minimize disruption from physical transportation." Mr. Guzman objects to appearing by video and requests that he be physically present in the courtroom at the status conference on February 3, 2017 and whenever the Court and the parties appear in relation to his case.

I. BACKGROUND

Mr. Guzman was arrested in Mexico in January of 2016. After his arrest, the United States government sought his extradition to answer charges in this country. Mr. Guzman, through his attorneys in Mexico, challenged the legality of the extradition requests. Mr. Guzman's attorneys were in the process of appealing the extradition order when Mr. Guzman was transported to the United States, suddenly and without warning to his attorneys, on January 19, 2017. At the very moment Mr. Guzman was being airlifted from the maximum security prison, his attorney, José Refugio Rodríguez, was at the prison waiting to meet with him, and was not informed of his client's circumstances.

On January 20, 2017, the day after he was taken from a Mexican prison, Mr. Guzman was brought before the Honorable James Orenstein, Magistrate Judge for the Eastern District of New York, for arraignment on the Superseding Indictment. This court proceeding lasted approximately 15 minutes and occurred without

incident. Mr. Guzman, who was not handcuffed during the proceeding, acted respectfully and was responsive to the Court's inquiries.

Since his arraignment, Mr. Guzman has been held in solitary confinement at the Metropolitan Correctional Center ("MCC") in Manhattan. He is locked in a cell 23 hours a day and only allowed to leave to meet with his attorneys and for one hour of solitary exercise. He has not been able to make any telephone calls, or to communicate directly with his family or counsel in Mexico.

Prior to his arrival in this District, neither Mr. Guzman, nor his Mexican attorneys, had been apprised that he would be extradited to face charges in the Eastern District of New York. The extradition requests provided to Mr. Guzman and his Mexican attorneys referenced charges filed in the Southern District of California and the Western District of Texas. Mr. Guzman has never before been in a United States courtroom. He has no experience with and little understanding of the American legal system.

On the day that Mr. Guzman first appeared in this District, in the hours preceding his arraignment, the government first held a full-scale press conference, at which the United States Attorney called Mr. Guzman "a man who has known no other life than one of crime, violence, death, and destruction," and then filed a 56-page document styled as a "Memorandum of Law in Support of Pretrial Detention" that made a series of very serious allegations about Mr. Guzman, some of which were outside the four corners of the Indictment, such as claiming that Mr. Guzman is responsible for the deaths of "thousands."

The extradition and prosecution of Mr. Guzman has generated robust media coverage in New York, the United States and the world. In just the week after his appearance before Magistrate Judge Orenstein, the New York Times, Wall Street Journal, New York Daily News, New York Post, and New York Newsday published multiple articles about Mr. Guzman's case.

## II. MR. GUZMAN'S PHYSICAL PRESENCE IN COURT IS NECESSARY TO PROTECT HIS SIXTH AMENDMENT RIGHT TO COUNSEL, TO ALLOW HIM TO PARTICIPATE IN THE DEFENSE OF HIS CASE, AND TO ENSURE HIS CONFIDENCE IN THE FAIRNESS OF THE JUDICIAL PROCESS.

Every defendant has a right, under the due process clause of the Fourteenth Amendment, to be present in court "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Com. of Mass.*, 291 U.S. 97, 105–06 (1934). Thus, unless a defendant's "presence would be useless, or the benefit [of his presence] but a

shadow," he enjoys the privilege to be present in court when his case is discussed. *Id.* at 106-107.

A defendant's presence in court also serves to effectuate his Sixth Amendment right to counsel. The Sixth Amendment "grants to the accused *personally* the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975)(emphasis added.) Of course, the Amendment also guarantees the right to the "assistance" of counsel. Nevertheless, counsel is always but an assistant to the defendant, who is personally and directly granted the right to defend his case. *Id.* at 819-820.

Pursuant to the Federal Rules of Criminal Procedure, a defendant must be present at certain court appearances, including the initial appearance, arraignment, trial, and sentencing. Fed. R. Crim. P 43(a). The Rule states that a defendant's appearance is not "required" when the proceeding "involves only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3). In certain circumstances, the Federal Rules of Criminal Procedure anticipate that a defendant may appear in court by video teleconferencing. *See* Fed. R. Crim. P. 5(f) and 10(c). However, in every instance that the Rules allow for video conferencing, the defendant's consent is required. *Id.* Of course, rules of procedure must always yield to the constitutional rights and privileges noted above.

Given the unusual nature of the extradition process in this case, Mr. Guzman's presence in court is necessary to ensure his faith in the fundamental fairness of the American judicial process. On January 19, as far as Mr. Guzman and his attorneys were aware, his extradition case was proceeding through the Mexican judicial process. With no warning to him or his counsel, he was taken from a Mexican prison and airlifted to Long Island. He met and spoke with his appointed counsel for the first time on the morning of January 20 and appeared before the Magistrate Judge to plead not guilty to the charges later that day.

Mr. Guzman has been accused of serious charges, one of which carries a mandatory life sentence. He has the right to understand the process through which this case will proceed. He has a right to see the Judge that will preside over his case and the prosecutors who will pursue his conviction and imprisonment. Every defendant deserves the opportunity to observe the legal process by which his case will be decided. This is especially true in cases such as Mr. Guzman's, where the defendant is a citizen of another country and has no experience with and little knowledge of the American legal system. Any person in that situation has an interest in being present in the courtroom to see for himself the nature of the proceedings by which he will be judged.

Most significantly, Mr. Guzman has a right to confer directly with his counsel as issues arise during each court proceeding. We anticipate that a number of

issues, involving both fact and law, may be addressed at the status conference on February 3. By letter dated January 27, 2017, the government has asked the Court to "inquire" regarding Mr. Guzman's "financial eligibility for court-appointed counsel." Additionally, the government has requested that the court appoint *Curcio* counsel to explore a potential conflict of interest arising out of Mr. Guzman's continued representation by the Federal Defenders. Should the Court be inclined to grant the government's request and appoint *Curcio* counsel, it is imperative that Mr. Guzman be present in court and have Your Honor explain why a lawyer he has not requested, with whom he has had no prior contact, will be suddenly seeking to meet with him.

Appearance by video teleconferencing is a pale substitute for a defendant's physical presence in the courtroom, and is typically used in this district only where a defendant has been unruly in court on a prior occasion. Inside the courtroom, seated next to his attorneys, Mr. Guzman will be able to ask them questions concerning the proceeding, and to assist counsel as factual questions arise. Remaining at a remote location and appearing by video teleconference obstructs this opportunity and thus frustrates Mr. Guzman's Sixth Amendment right to counsel. The lesser nature of remote appearance by video teleconference and its impact on the right to counsel undergird the rule that such appearances may only happen with the consent of the defendant under Fed. R. Crim. P. 5(f) and 10(c).

Mr. Guzman's Sixth Amendment right to counsel and his Fourteenth Amendment right to due process require that he be physically present in the courtroom when his case is before this Court

## III. MR. GUZMAN'S PHYSICAL PRESENCE IN COURT IS NECESSARY TO AVOID PREJUDICIAL PRETRIAL PUBLICITY.

The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Sensational and prejudicial pretrial publicity often results in a jury panel denuded of its impartiality. *See e.g. Skilling v. United States*, 561 U.S. 358, 378 (2010); *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966); *Irvin* at 719.

Should Mr. Guzman not appear physically in court on February 3, it will be reported by the national and international media. Despite the statement in the Court's order of January 25 that an appearance by video would be considered "only in order to minimize disruption from physical transportation," the media will be free to report and speculate as to other reasons Mr. Guzman was not allowed to travel to court. His absence from the courtroom would necessarily lead to the public impression that Mr. Guzman is too dangerous to be brought to the courtroom. It should be noted that defense counsel is not aware of a single complaint since United Stated authorities took custody of Mr. Guzman suggesting he has been

uncooperative or disruptive in any way. Indeed, Mr. Guzman conducted himself respectfully and calmly at every point during his processing, transport, and appearance in court on January 20.

Furthermore, because of the intense, international media scrutiny of this case, forcing Mr. Guzman to appear by video teleconference risks prejudicing prospective jurors. There have already been press reports detailing the stringent nature of Mr. Guzman's confinement at MCC. Should Mr. Guzman not appear in the courtroom, we can anticipate courtroom sketches depicting his "presence" as a face on video screen. It will undoubtedly be impossible to impanel a jury completely shielded from press accounts of Mr. Guzman. Therefore, it is imperative that all reasonable efforts are made to not add to the wealth of prejudicial media coverage.

IV. CONCLUSION

For the above stated reasons we object to Court's order of January 25, 2017 and request Mr. Guzman's physical presence in court at his February 3, 2017 hearing and at every subsequent court appearance.

Thank you for your attention to this matter.

Respectfully submitted,

/s/

Michael K. Schneider, Esq.
Michelle Gelernt, Esq.

cc: Clerk of the Court [by ECF]
AUSA Patricia Notopoulos, Esq.
AUSA Andrea Goldbarg, Esq.
AUSA Michael Robotti, Esq.
AUSA Hiral Mehta, Esq.
Mr. Joaquin Guzman