

U.S. Department of Justice

United States Attorney
Eastern District of New York

GMP: HDM:PEN:MR
F. #2009R01065

271 Cadman Plaza East
Brooklyn, New York 11201

April 21, 2017

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joaquin Archivaldo Guzman Loera
                Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter supplementing the government's prior submission, dated January 27, 2017 ("January 27 Submission"), see Dkt. No. 23, which alerted the Court to potential conflicts of interests concerning the Federal Defenders of New York, Inc.'s (the "Federal Defenders") representation of the defendant Joaquin Archivaldo Guzman Loera (the "defendant"). Specifically, the Federal Defenders have previously represented three cooperating witnesses (CW-1, CW-2 and CW-3) who are potential trial witnesses and one of the defendant's co-conspirators, who is a confidential source for the government (CS-1) (collectively, the "Cooperating Defendants").[1]

      In its January 27 Submission, the government requested that the Court appoint Curcio counsel and conduct a Curcio hearing based on the Federal Defenders' previous representation of potential trial witnesses against the defendant. See United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982) ("Curcio"). At the February 3, 2017 status conference (the "Conference"), the Court appointed Matthew Fishbein, Esq., as Curcio counsel for the defendant. The Court, however, stated that it was not prepared to go forward with a Curcio

---

[1] In its January 27 Submission, the government notified the Court of a fifth person whose previous representation by the Federal Defenders raised a potential conflict of interest. After further investigating that representation, the government does not believe that the representation of that individual raises a potential conflict.

hearing, because the Court, Curcio counsel and the defendant did not have the necessary information to conduct a hearing—specifically, the names of the defendants previously represented by the Federal Defenders and the nature of the Federal Defenders' prior representation. See Tr. of Feb. 3, 2017 Status Conference ("Tr.") at 7-8. The Court also noted that the government might not be able to provide this information to the defendant because of "confidentiality concerns." Id.

Since the Conference, it has become apparent that the defendant intends to retain private counsel.[2] To date, the defendant has met with 16 private attorneys to explore the possibility of retaining counsel. Nonetheless, because the defendant has not yet retained private counsel, the government renews its request that the Court hold a Curcio hearing at the next status conference, which is scheduled for May 5, 2017.[3] Accordingly, the government provides detailed information about the Cooperating Defendants below. Although the government does not identify the Cooperating Defendants by name, the information nevertheless provides a sufficient basis for the Court to conduct a Curcio hearing and allows the defendant to make a knowing and voluntary waiver of the potential conflicts of interest, if he so chooses. Separately, the government is submitting an ex parte letter to the Court ("Third Ex Parte Submission"), which provides additional information regarding the Cooperating Defendants that is relevant to the Court's evaluation of the potential conflicts and the defendant's waiver of those conflicts. See Dkt. No. 66.

I.     Factual Background Underlying Potential Conflicts

   A.     CW-1

CW-1 facilitated the transportation of multi-ton quantities of cocaine for the Sinaloa Cartel when the defendant was a Sinaloa Cartel leader. CW-1 met the defendant on at least one occasion and had other direct dealings with him. CW-1 was commonly known by an alias. CW-1 pleaded guilty to a narcotics trafficking offense and is currently in custody in the United States. CW-1's family resides in Mexico. As detailed in the government's Third Ex Parte Submission, CW-1 has indicated to the government that he/she does not want his/her

---

[2] On March 13, 2017, the defendant filed a motion requesting modification of the Special Administrative Measures ("SAMs"), which he claims will assist in his ability to retain counsel. Specifically, he requested that the SAMs be modified to allow (1) the defendant to speak with his wife for the limited purpose of communicating his choice of private counsel and determining the availability of assets necessary to retain such counsel and (2) private attorneys to relay messages between the defendant and third parties for the limited purposes of ascertaining and securing the assets necessary for their representation. See Def. Mot. to Vacate SAMs at 1, Dkt. No. 50.

[3] In the event that the defendant ultimately elects not to retain counsel, the government reserves its right to move to disqualify the Federal Defenders because the defendant is not eligible for appointed counsel due to his vast financial resources.

name disclosed to the defendant because of safety concerns for himself/herself and his/her family. The Federal Defenders represented CW-1 at two court appearances. According to CW-1, CW-1 had substantive discussions about his/her case with counsel from the Federal Defenders. CW-1 has indicated that he/she would not waive the conflict with the Federal Defenders.

    B.    CW-2

CW-2 supplied multi-ton quantities of cocaine to the defendant. U.S. authorities seized one shipment, which contained several tons of cocaine and was destined for the defendant's organization. CW-2 never met the defendant. CW-2 pleaded guilty to a narcotics trafficking offense, served a sentence of incarceration in the United States and is currently in Colombia. As detailed in the government's Third Ex Parte Submission, CW-2 has indicated to the government that he/she does not want his/her name disclosed to the defendant because of safety concerns for himself/herself and his/her family, who are located in Colombia. The Federal Defenders represented CW-2 at arraignment. CW-2 has indicated that he/she would not waive the conflict with the Federal Defenders.

    C.    CW-3

CW-3 facilitated shipments to the defendant of multi-ton quantities of marijuana and large quantities of cocaine. CW-3 had face-to-face meetings with the defendant on a few occasions many years ago. CW-3 pleaded guilty to a narcotics trafficking offense, served a sentence of incarceration in the United States and is currently located in Colombia. As detailed in the government's Third Ex Parte Submission, CW-3 has indicated to the government that he/she does not want his/her name disclosed to the defendant because of safety concerns for himself/herself and his/her family. The Federal Defenders represented CW-3 on a motion for a reduction in sentence based on an amendment to the United States Sentencing Guidelines. As part of that motion, the Federal Defenders at least had access to CW-3's Presentence Investigation Report ("PSR") and potentially the government's 5K1.1 Letter, which detailed CW-3's cooperation with the government. It appears from the motion that the assigned Federal Defender had verbal contact with the witness, at least to the extent of obtaining a waiver of appearance. Both the PSR and the 5K.1 letter were filed under seal, as was the Federal Defenders' motion for reduction in sentence, which was denied by the sentencing court. CW-3 has indicated that he/she would waive the conflict with the Federal Defenders.

    D.    CS-1

CS-1 facilitated the transportation of marijuana for the Sinaloa Cartel. CS-1 has never met the defendant. CS-1 has provided information to the government regarding the Sinaloa Cartel. CS-1 is currently in custody in the United States. As detailed in the government's Third Ex Parte Submission, CS-1 has indicated to the government that he/she does not want his/her name disclosed to the defendant because of safety concerns for himself/herself and his/her family. The Federal Defenders represented CS-1 for several

3

months and for multiple court appearances. CS-1 has indicated that he/she would waive the conflict with the Federal Defenders.

As the Court recognized at the Conference, based on the defendant's documented history of violence and intimidation, and for the specific reasons outlined in the government's Third Ex Parte Submission, the government has significant safety concerns about disclosing to the defendant the names of the Cooperating Defendants noted above at this early stage of the proceeding.[4] Shortly after the Conference, the government did provide the names of the Cooperating Defendants and the specific nature of the Federal Defenders' representation of these individuals to the Federal Defenders and Curcio counsel with the understanding and assurances from counsel that they would not share this information with the defendant.

II.   Prior Representation of Cooperating Witnesses and Co-Conspirators Presents a Serious Potential Conflict But Is Waivable Under the Law

The defendant has a right to conflict-free counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981). To ensure that this right to conflict-free counsel is not abridged, a district court has "two distinct obligations" during criminal proceedings: (1) to initiate an inquiry whenever it is "sufficiently apprised of even the possibility of a conflict of interest," and (2) to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict. United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994).

The defendant, however, has "no constitutional right to continuity of appointed counsel." United States v. Parker, 469 F.3d 57, 61 (2d Cir. 2006) (citing Morris v. Slappy, 461 U.S. 1, 11-13 (1983)). "While the criminal defendant does of course retain some interest in continuous representation, courts are afforded considerable latitude in their decisions to replace appointed counsel, and may do so where a potential conflict of interest exists." See id. (citing United States ex rel. Stewart v. Kelly, 870 F.2d 854, 857 (2d Cir.1989)).

The Federal Defenders' prior representation of the Cooperating Defendants presents a potential conflict. See United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993); United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman,

---

[4]   While the identity of the Cooperating Defendants ultimately may be revealed at trial, providing such information significantly in advance of trial heightens the risk that the defendant and his organization would have time to locate the witnesses and their families and execute plans to threaten or cause physical harm to these individuals to prevent their testimony at trial.

4

861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration ("EC") 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to her by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore, "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295. Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. See, e.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

In representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients in a manner adverse to the client's interests through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for attorney to cross-examine his prior client because attorney is in position to use information gleaned from prior representation "either purposely or inadvertently").

The duty of loyalty to his previous client thus effectively precludes a lawyer from vigorously cross-examining that previous client or commenting on his credibility, which may be essential to the effective representation of the present client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (concluding disqualification necessary because defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests" — a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995) (holding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

Notwithstanding the limitations outlined above, a defendant may generally waive potential conflicts arising from his attorney's prior representation of a cooperating witness. See United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003) (citing United States v. Cunningham, 672 F. 2d at 1073). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

5

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 127 (quoting United States v. Fulton, 5 F.3d 605, 613 (2d 1993)).

III. The Defendant Can Waive the Potential Conflict Without Having the Names of Cooperating Defendants Previously Represented By the Federal Defenders

As discussed above, a defendant can waive a potential conflict involving his counsel's prior representation of potential cooperating defendants. The question here is whether the defendant can make a knowing and intelligent waiver of this potential conflict without knowing the names of the four Cooperating Defendants at issue in this case.[5] For the reasons stated below, the government submits that he can make such a waiver.

As the Second Circuit held in Curcio, a waiver is knowing and intelligent where the defendant is "informed" and has the "capacity to make a rational decision." Curcio, 680 F.2d at 888. The Curcio court noted that the Supreme Court "consistently has rejected any paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case." Id. (internal quotation marks and citation omitted). Accordingly, "if the defendant reveals that he is aware of and understands the various risks and pitfalls, and that he has the rational capacity to make such a decision on the basis of this information, and if he states clearly and unequivocally, that he nevertheless chooses to hazard those dangers, we would regard his waiver as knowing and intelligent." Id.

Here, despite not having the Cooperating Defendants' names, the Court and Curcio counsel can apprise the defendant of the nature of his relationship with the four Cooperating Defendants, the nature of the Federal Defenders' prior representation of them and the limitations placed on the Federal Defenders because of their prior representation, including limits on disclosing client information and cross-examination at trial.[6] Ultimately, the focus

---

[5] At the Conference, the Court inquired whether the defendant could knowingly waive the potential conflict without knowing the names of the individuals. Tr. at 8. At the time, Curcio counsel stated that his initial response was that the defendant could not make a knowing and intelligent waiver without the names. Id. at 12.

[6] Moreover, it is unclear whether the defendant would recognize the names of all of the Cooperating Defendants, because either he never knew of the existence of the Cooperating Defendant or he knew him/her solely through an alias or nickname (such as the defendant's nickname "El Chapo," or "shorty"). Narcotics traffickers routinely conceal their true identify and use alias names to conduct their criminal activity. Even individuals who have

6

of the Curcio inquiry primarily involves the defendant's understanding that the Federal Defenders cannot use privileged information obtained from the Cooperating Defendants to assist in the defendant's defense or cross-examine the Cooperating Defendants should they become witnesses at trial.

Notably, CW-1 and CW-2 have not consented to allow the Federal Defenders to cross-examine them should they be called to testify at trial. Thus, the Federal Defenders may be barred from cross-examining CW-1 and CW-2 on ethical grounds. See Massino, 303 F. Supp. 2d at 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); see also United States v. Pappa, 37 F. App'x 551, 554 (2d Cir. 2002) (affirming disqualification of Federal Defender attorney where another Federal Defender attorney "had been briefly assigned to a potential government witness and Federal Defender paralegals and interns had been exposed to that witness and to relevant discovery files.").

In sum, the information provided by the government to the defendant provides the defendant with an understanding of the breadth of the Cooperating Defendant's criminal activity with the defendant, the extent of their contact with the defendant, a history of the Cooperating Defendant's criminal charges and the extent of the Federal Defenders' representation of the Cooperating Defendants. Accordingly, the defendant has been provided with sufficient facts to allow him to understand the risks presented by maintaining conflicted counsel, such that he can knowing and intelligently waive the potential conflicts of interest if he so chooses.

IV. The Court Should Weigh the Defendant's Potential Waiver Against His Right to Conflict-Free Counsel Given the Severe Potential Sentence and Strongly Consider Rejecting the Waiver

The Court, however, should weigh any potential waiver by the defendant against the severity of the defendant's charges and sentence and strongly consider rejecting the defendant's waiver in these circumstances. Courts have held that in cases involving severe potential sentences, the defendant's right to conflict-free counsel is too significant to allow the defendant to waive a potential conflict. Indeed, the Court acknowledged this concern at the Conference:

> Okay. Now putting all that aside, it also seems to me that even if I could get a knowing and voluntary waiver, this may be a situation, considering the nature of the conduct and the potential sentence that arises from it,

---

known each other for years often do not know each other's true names. Drug trafficking organizations function despite the anonymity of their members, because anonymity is a contributing factor to their success.

7

> where I would not accept a waiver because it's just too big a case and the defendant should have, it seems to me, conflict-free counsel.

Tr. at 12.

This Court's decision in Massino is instructive. In that case, as here, the defendant's counsel had previously represented a potential cooperating witness for the government. See Massino, 303 F. Supp. 2d at 259. As part of his representation of the cooperating witness, the defendant's counsel had learned of the witness' cooperation against the defendant. Id.

In Massino, the Court held that because of the prior representation of the cooperating witness, the defendant's counsel could not cross-examine the cooperating witness without his consent. Id. at 262. The Massino Court found that this would hinder the defendant's legal representation, because his counsel would be unable to make certain "conflict-free" decisions. Id. This Court referred to this conflict as a "lapse in representation." Id. It concluded that this "lapse in representation" would "be particularly severe in the instant case as [the defendant] faces the death penalty." Id. at 262-63. Accordingly, this Court held that the potential conflict was unwaivable: "[i]n a situation where the stakes are so high and the penalty so grave, the court must do everything in its power to protect the accused's Sixth Amendment rights, and to secure a just and fair trial." Id. at 263. In the instant case, the superseding indictment charges the defendant with seventeen counts related to extremely serious crimes that span a 25-year period. Count One, the Continuing Criminal Enterprise charge, for example, carries a mandatory life sentence.

Moreover, in Massino, in a factual scenario similar to the case here, this Court found that, because defendant's counsel was court-appointed, had been counsel for only four weeks and, from the very beginning, had been aware of the potential conflict, his removal would cause little prejudice to the defendant. Id. at 263.

Similarly, the Federal Defenders in the instant case are court-appointed and have been aware of the potential conflict from the very beginning of the representation. While Federal Defenders have been on the case for a longer period, approximately three months, during this time the defendant has been interviewing private counsel and has indicated in Court filings that he wants to communicate with his wife regarding retaining counsel. Thus, the defendant does not appear to have a vested interest in the Federal Defenders' representation. Moreover, this case, which the Court has deemed complex for Speedy Trial purposes, is at a very early stage, for example, the government is still in the very early stages of producing discovery.

In light of the severity of the defendant's potential sentence and the concomitant importance of conflict-free counsel, the Court should strongly consider whether, in its discretion, it should reject the defendant's waiver of the potential conflicts of interest, if the defendant chooses to waive them.

8

V.       <u>Conclusion</u>

For the foregoing reasons, and the reasons set forth in the government's Third <u>Ex Parte</u> Submission, <u>see</u> Dkt. No. 66, the Court should hold a <u>Curcio</u> hearing at the May 5, 2017 status conference and decide whether the defendant can waive the potential conflicts of interest and whether the Court shall accept such a waiver.

          Respectfully submitted,

          BRIDGET M. ROHDE
          ACTING UNITED STATES ATTORNEY
          Eastern District of New York
          271 Cadman Plaza East
          Brooklyn, New York 11201

          ARTHUR G. WYATT, CHIEF
          Narcotic and Dangerous Drug Section
          Criminal Division,
          U.S. Department of Justice

          OF COUNSEL:

          BENJAMIN GREENBERG
          ACTING UNITED STATES ATTORNEY
          Southern District of Florida

cc:    Michelle Gelernt, Esq. (counsel to defendant)
       Michael Schneider, Esq. (counsel to defendant)
       Edward Zas, Esq. (counsel to defendant)