Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

April 28, 2017

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Joaquin Archivaldo Guzman Loera, 09 CR 466 (BMC)**

Your Honor:

We write in response to the government's letter of April 21, 2017 ("Govt. let.") requesting what is commonly called a *Curcio* hearing and the Court's order stating that it will hold such a hearing on the next court date. *See United States v. Curcio*, 694 F.2d. 14, 24-25 (2d Cir. 1982). Defense counsel have discussed with Mr. Guzman the information provided by the government in its letter. We understand that conflict counsel intends to meet with Mr. Guzman on Tuesday, May 2, 2017 to discuss the government's letter and advise Mr. Guzman regarding the issues raised therein.

The information provided by the government in its letter merely raises the specter of potential conflicts of interest.[1] We therefore agree that Mr. Guzman may, after being informed by the Court of the possible conflicts, reasonably choose to continue to be represented by the Federal Defenders. Should Mr. Guzman choose to be represented by the Federal Defenders, the Court should rebuff the government's invitation to reject his waiver. (Govt. let. at 8). The potential conflicts raised by the government are entirely speculative and do not approach the type of actual conflict that would warrant denying Mr. Guzman his right to counsel of his choice. Should the Court find that it is considering relieving the Federal Defenders despite a knowing and voluntary waiver of the potential conflicts, we request the opportunity to brief this issue more fully.

The government's reliance on *United States v. Massino*, 303 F. Supp. 2d 258, 263 (E.D.N.Y. 2003) is misplaced. *Massino* was a death penalty case. The conflict in *Massino* involved the risk that

[1] The government's letter was accompanied by an *ex parte* submission, the third *ex parte* filing made by the government in this case. (Dkt. No. 66). Because we have not seen the *ex parte* letter, we cannot respond to its contents or even determine whether it was appropriately filed *ex parte*. The purpose of a *Curcio* hearing is to inform a defendant of his right to conflict-free counsel and to determine if he will waive that right "knowingly and intelligently." *Curcio*, 680 F.2d at 888. It is difficult to understand how information given to the Court *ex parte*, and thus hidden from Mr. Guzman, could advance the process of ensuring that he makes a knowing and intelligent choice concerning his representation.

appointed death penalty counsel would be involved in cross examining a witness who he had personally represented for five years—through sentencing in a criminal matter. *Id.* at 259-260. At the time he was relieved, death penalty counsel had only represented Massino for four weeks. Massino's other defense counsel, who had represented him for 10 months, remained on the case. *Id.* at 262.

Here, CW-1 and CW-2, the two witnesses the government asserts will not waive any conflict and agree to be cross examined by the Federal Defenders, were represented by other Federal Defender attorneys, not Mr. Guzman's defense counsel. The Federal Defenders represented both of these persons for less than a week before being relieved. As far as we can tell, the Federal Defender attorneys represented CW-1 and CW-2 at their initial appearances only, and handled no substantive issues. The Federal Defender attorney who represented CW-1 made a second court appearance, but only to be relieved by other counsel. Considering the nature of this representation, the risk that privileged information from the representation of these two witnesses exists and could be used against them in cross examination is remote.

Furthermore, the government's suggestion that the Court substitute other appointed counsel in this case would prejudice Mr. Guzman far more than the defendant in *Massino* was prejudiced by the removal of only one of his counsel. Since his extradition three months ago, Mr. Guzman has worked closely with the defense team in preparing his defense. In fact, other than private attorneys discussing possible representation, the defense team are the only people Mr. Guzman has met with in those three months. Replacing the three experienced Federal Defenders, three paralegals, and investigator currently working with Mr. Guzman with counsel appointed from the CJA panel would prejudice Mr. Guzman, not just by denying him counsel of choice, but by requiring him to begin again to go over the facts of the case with new counsel—wasting literally hundreds of hours of work.

We thank the Court in advance for its attention to these matters.

Respectfully submitted,

/s/

Michelle Gelernt, Esq.
Michael K. Schneider, Esq.

cc: Clerk of the Court [by ECF]
AUSA Patricia Notopoulos, Esq.
AUSA Andrea Goldbarg, Esq.
AUSA Michael Robotti, Esq.
AUSA Hiral Mehta, Esq.
Mr. Joaquin Guzman