**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:AG:MPR
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 26, 2017

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09-466 (S-4) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in reply to the defendant Joaquin Archivaldo Guzman Loera's ("Guzman" or the "defendant") May 19, 2017 letter ("Def. Br."). See Dkt. No. 79. In his letter, the defendant moves to compel production of an unredacted copy of the Rule of Specialty ("ROS") Waiver and underlying documents, as well as the Southern District of California ("SDCA") and Western District of Texas ("WDTX") extradition packages submitted to Mexico in connection with his extradition (the "Extradition Packages") (collectively, the "Requested Documents").[1] For the reasons set forth below, (1) the Requested Documents are not discoverable under Federal Rule of Criminal Procedure 16; (2) certain of the Requested Documents are exempt from discovery under 18 U.S.C. § 3500; and (3) the grand jury minutes sought as part of the Requested Documents are not discoverable under Federal Rules of Criminal Procedure 6 and 16. The Court thus should deny the defendant's motion.

[1] The government's request for the ROS Waiver and the Extradition Packages each include (1) an affidavit from an Assistant United States Attorney ("AUSA"); (2) an affidavit from a law enforcement officer; (3) affidavits from cooperating witnesses; (4) the text of pertinent United States statutes; (5) certified copies of the indictment and arrest warrant for the defendant; and (6) documentary evidence, such as seizure photographs and lab reports, submitted as exhibits to the law enforcement agent affidavit. The government's requests to Mexico for extradition on the Extradition Packages and consent to the ROS Waiver were transmitted to the Mexican Government by Diplomatic Notes prepared by the State Department, which are simply formal communications between countries.

## I. The Requested Documents are Not Discoverable under Rule 16

### A. The Requested Documents are Not Material under Rule 16(a)(1)(E)(i)

The defendant argues that the Requested Documents are "material," "essential," and "crucial" to challenging his extradition and that it is "unfair" that the government has not produced them. Def. Br. at 3-4 & n.3. But, aside from these "conclusory allegation[s]," which are insufficient under the law, United States v. Rigas, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003), the defendant has wholly failed to explain how and why the documents he seeks are material to his motion to dismiss the indictment based on the ROS Waiver or any broader challenge to his extradition. "Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." United States v. Scully, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015) (alteration in original; internal quotation marks omitted). Here, the defendant's requests, which are unsupported by any specific claim of materiality, are nothing more than that. Thus, the defendant has failed to meet his "burden to make a prima facie showing that the documents sought under Rule 16(a)(1)(E)(i) are material to preparing the defense." Rigas, 258 F. Supp. 2d at 307 (emphasis omitted). His motion should be denied.

#### i. The Requested Documents are Not Material Because the Defendant Lacks Standing to Bring His Motion to Dismiss the Indictment

As an initial matter, under established Second Circuit case law, the defendant does not have standing to argue that the ROS Waiver is invalid, the government's prosecution violates the ROS Waiver, or the government has violated the Extradition Treaty with Mexico or any other agreements with the Government of Mexico. See United States v. Garavito-Garcia, 827 F.3d 242, 246-47 (2d Cir. 2016); United States v. Suarez, 791 F.3d 363, 367-68 (2d Cir. 2015). "As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused." Suarez, 791 F.3d at 367 (internal quotation marks omitted). "These concerns apply equally whether a criminal defendant objects based on the rule of specialty or based on the interpretation of an extradition treaty or Diplomatic Note." Id.

Thus, in the absence of an official protest by the Government of Mexico, the defendant does not have standing to "invoke the extradition treaty as a basis for the dismissal of the indictment." Garavito-Garcia, 827 F.3d at 247. As no such protest has been lodged here, the defendant lacks standing to bring his motion to dismiss the indictment. Documents necessary to a motion that the defendant lacks standing to make are, by definition, not material to the defense. See United States v. Wilson, No. 15-CR-00142-EAW-MJR, 2017 WL 1456984, at *8 (W.D.N.Y. Apr. 25, 2017) (holding defendant had "no practical need for" sealed search warrants where he lacked standing to challenge search); United States v. Yousef, No. 08 Cr. 1213 (JFK), 2011 WL 2899244, at *4 (S.D.N.Y. June 30, 2011) (holding defendant not entitled to discovery where records would support only "legally untenable" motion to dismiss, and "no amount of additional discovery will overcome that bar"); United States v. Findley, No. 09-CR-267A SR, 2010 WL 4273919, at *3 (W.D.N.Y. Oct. 28, 2010) ("Absent

standing to challenge the search warrant . . . , the defendant's request [for production of search warrant] is denied without prejudice."); United States v. Nunez, No. 89–CR–730, 1989 WL 161534, at *1 (S.D.N.Y. Dec. 22, 1989) (holding search warrant not material to preparation of defense where defendant had not shown privacy interest in premises searched).

Citing Suarez and United States v Bout, 731 F.3d 233 (2d Cir. 2013), the defendant argues that, "in reviewing decisions considering this [standing] issue, regardless of what outcome the court may have reached, it is readily apparent that the defendant was provided with the extradition documents necessary to his motion or bring his challenge." Def. Br. at 2 n.3. But the defendant neglects the fact that discovery in both cases occurred before the Second Circuit settled the standing issue in Suarez. See Suarez, 791 F.3d at 366 (noting that Second Circuit had not previously resolved standing issue). Thus, unlike here, the district courts in those cases had no occasion to consider whether the extradition documents were material under Rule 16 in light of the binding precedent in Suarez that the defendant lacks standing to make a motion to dismiss the indictment based on those documents.

In any event, the information reviewed in Suarez and Bout—such as the "resolution ordering" the defendant's extradition and the "assurances in a Diplomatic Note to the Colombian government," Suarez, 791 F.3d at 365, and "the record of the proceedings in" the foreign country, Bout, 731 F.3d at 240—is the same information contained in the ROS Waiver previously provided to defense counsel, see Draft English Translation of Redacted ROS Waiver, Bates Numbers 465-66 (list of charges in Extradition Packages for which Mexico granted extradition and summary of proceedings on Extradition Packages in Mexico), 481 (stating Diplomatic Note from United States provided assurances against death penalty), 534-36 (list of charges for which Mexico granted ROS Waiver).[2] Thus, those cases do not support the defendant's claim that he needs documents beyond the redacted ROS Waiver already provided to him to litigate his motion.

ii. Even Assuming the Defendant Has Standing, the Requested Documents are Not Material

Even if the defendant had standing to bring his motion to dismiss the indictment based on an alleged violation of the Rule of Specialty, the scope of that motion is narrowly cabined by settled law. On that motion, the only issues are whether (1) the Government of Mexico issued a ROS Waiver and (2) the government's prosecution is within the scope of that waiver. See United States v. Campbell, 300 F.3d 202, 210 (2d Cir. 2002) (stating that, with respect to Rule of Specialty, "our courts have authority to determine whether a prosecution in the United States for a given crime is within the scope of the extraditing country's extradition

[2] Moreover, regarding Bout, the government notes that the diplomatic cables at issue were leaked by Wikileaks, not provided in discovery by the government. See United States v. Bout, No. 08 CR. 365 SAS, 2011 WL 3369797, at *2-3 (S.D.N.Y. Aug. 2, 2011), aff'd, 731 F.3d 233 (2d Cir. 2013).

decree"). The redacted ROS Waiver, previously provided by the government to the defendant, is the only document necessary to resolve the defendant's motion.

As to the first point, whether the Government of Mexico issued the ROS Waiver, despite the defendant's repeated references in his filings to the "purported Rule of Specialty Waiver," Def. Br. 1, there can be no serious dispute that the Government of Mexico, in fact, issued the ROS Waiver. Insofar as the defendant's use of that term is meant to question whether the Government of Mexico validly issued the ROS Waiver in accordance with its law and the Extradition Treaty between Mexico and the United States, that issue is not reviewable in United States courts. See Garavito-Garcia, 827 F.3d at 247 (stating that "our courts cannot second-guess another country's grant of extradition to the United States," and rejecting claim that indictment should be dismissed because Colombia violated extradition treaty (internal quotation marks omitted)); Campbell, 300 F.3d at 209 (concluding that claim that Costa Rica should not have granted extradition on certain charge was unreviewable by U.S. court); id. ("It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request."). Thus, the redacted ROS waiver already provided to the defendant is the only document material to resolving the first point on his motion. That document definitively establishes that the Government of Mexico issued a ROS Waiver.

With respect to the second point, whether the government's prosecution is within the scope of the ROS Waiver, the ROS Waiver specifically lists the charges for which the United States requested Mexico grant the ROS Waiver, see Bates Numbers 472-73, as well as the charges for which Mexico granted the ROS Waiver (which are identical to the requested charges), see Bates Numbers 535-36. In particular, the ROS Waiver authorizes the government to try the defendant on the charges set forth in the Fourth Superseding Indictment in this case, which a grand jury returned on May 11, 2016. See id. The government has produced a redacted copy of the 82-page ROS Waiver from the Government of Mexico, which provides a detailed analysis of the charged crimes in the United States and comparable crimes in Mexico, including a discussion of applicable penalties. See Bates Numbers 510-12. Thus, the scope of the crimes for which the Government of Mexico granted the ROS Waiver is clear. The defendant has failed to articulate any reason why he needs additional information to argue that the government's prosecution is outside the scope of the ROS Waiver. Neither the redacted witness statements in the ROS Waiver, nor any of the other Requested Documents are material to his motion to dismiss on this ground.[3]

---

[3] In Campbell, the Second Circuit examined (1) the AUSA affidavit submitted in support of the government's request for the defendant's extradition to determine if Costa Rica had, in fact, granted extradition on charges against the defendant under 18 U.S.C. § 924(c), which carried cumulative penalties and (2) certain communications between the United States and Costa Rican governments following the grant of extradition, which clarified the manner in which the 50-year maximum sentence could be imposed. See Campbell, 300 F.3d at 209-13. By contrast, here, the detailed ROS Waiver provides all the information, including information regarding the applicable penalties in the United States, necessary to determine the scope of the charges for which Mexico has authorized prosecution. In addition,

The defendant also argues that he needs the Extradition Packages to argue violations of unspecified "other provisions of the treaty." Def. Br. at 4. But, as with the ROS Waiver, the Government of Mexico's decision to extradite the defendant on the Extradition Packages is not reviewable by this Court. See Garavito-Garcia, 827 F.3d at 247; Campbell, 300 F.3d at 209. Additionally, whether or not the charges in the other districts, which are not before this Court, are within the scope of Mexico's grant of extradition on the Extradition Packages is not relevant to the proceedings in this case. The Extradition Packages simply have no bearing on the defendant's anticipated motion, and they are not material under Rule 16.[4]

Finally, the defendant claims that he needs access to the Requested Documents to determine whether the government provided any assurances to the Government of Mexico and, if so, whether the government has violated such assurances. See Def. Br. at 4. The government has conferred with the Department of Justice's Office of International Affairs in this regard and confirmed that the only assurance that the government provided to the Government of Mexico in connection with the defendant's extradition was that the government would not seek the death penalty. That assurance is set forth in the ROS Waiver. See Bates Numbers 470, 481. Thus, the Requested Documents are not material to any motion based on assurances provided by the government.

B. Disclosure of Extradition Documents in Other Cases Does not Justify Disclosure Here

Next, the defendant argues that he is entitled to the Requested Documents because the government "always" provides extradition-related documents. Def. Br. at 4. As discussed below, the limited instances in which the government previously has provided extradition-related documents as a courtesy do not support the defendant's position that the government should be compelled to do so in this particular case. The government's Rule 16 obligations are not heightened due to limited past instances of disclosure in unrelated cases. Cf. United States v. Pray, 734 F. Supp. 2d 158, 159 (D.D.C. 2010) ("It is not relevant whether U.S. Attorney's Offices elsewhere provide the periodic wiretap reports to criminal defendants.

---

there were no subsequent clarifying communications between the United States and Mexico regarding the ROS waiver.

[4] The defendant claims that the government should produce the extradition packages from WDTX and SDCA because the Government of Mexico already disclosed them. See Def. Br. at 6. The Government of Mexico's decision to disclose documents under Mexican law does not confer an obligation on the United States to similarly disclose those documents. The government's obligations under Rule 16 are not dependent upon the actions of a foreign sovereign. Moreover, the government has an independent obligation to protect witnesses and their families. Further dissemination of those documents by the government only increases the likelihood of harm to the potential witnesses. Additionally, it is unclear why the defendant is moving to compel disclosure of documents from the government that he has already received, through privately retained counsel, from the Government of Mexico.

The issue is whether the Government is required to divulge such reports to Defendants [under Rule 16]." (emphasis in original)).

First, the defendant incorrectly alleges that the government "always" provides extradition documents. In the past five years, this office has extradited well over one hundred defendants from foreign countries. The defendant does not allege, as he cannot, that it is the practice of this office to produce extradition-related documents as part of discovery in all cases. The defendant is, however, correct that in a few, limited instances, the government has produced some documents related to extradition. The government has done this as a courtesy, and not as an obligation under Rule 16, or any other rule or case law governing discovery. More specifically, the government provided certain extradition documents in an effort to facilitate plea negotiations, and in some instances to protect the victims of crimes. However, these rare instances are clearly distinguishable from this case. To begin, in almost all of the cases listed by the defendant (and others of which the government is aware), the defendants were extradited from countries that did not require the submission of first-person declarations or affidavits from witnesses. Instead, these packages only included an AUSA affidavit and an agent affidavit that provided a cursory and bare bones overview of the government's case. They did not name or identify any potential government witnesses.

However, as the Court is aware, in order to request a person's extradition from Mexico, the government is required to include, in addition to the AUSA and agent affidavits, first-person declarations. That is, the package must contain sworn statements from persons who have firsthand knowledge of the defendant and the defendant's criminal conduct. In other words, the government must disclose the identity of potential witnesses in its case.

In the one case cited by the defendant where the extradition involved Mexico, that case is significantly distinguishable as it involved a human-trafficking investigation. The government provided the defendants with copies of the extradition packages, including the first-person affidavits, which were from the victims of human trafficking. The government redacted the names and all identifying information of the victims from discovery before it turned over the documents. The government provided these documents to encourage plea negotiations, as well as to spare the victims from potentially having to testify at a trial. In these specific human-trafficking cases, there was no evidence of witness intimidation or threats, no obstruction of justice and no witness tampering. The voluntary, courtesy disclosure of highly redacted material by the government in those instances was in the best interest of the victims and the resolution of the case. That is hardly the situation here.

In this case, given the complexities of the charges, the span of the criminal conduct, and the defendant's role as the leader of the world's most prolific drug cartel, the government's requests to the Government of Mexico for the ROS Waiver and extradition on the Extradition Packages were more detailed and thorough than any of the extradition packages in the cases cited by the defendant. As discussed below, see Section I.C. infra, these documents reflect the government's work product and are more akin to the government's order of proof. For instance, the government's request for the ROS Waiver included detailed affidavits from more than ten cooperating witnesses, along with a lengthy affidavit by a law enforcement

agent, which lay out in detail a significant portion of the government's case. Given the significant amount of information regarding the government's case disclosed in the Requested Documents, and the security risks associated with doing so, the government does not intend to provide the documents to the defendant as a courtesy, as it has done in some past cases.[5]

The cases cited by the defendant do nothing to further their argument. In United States v. Trabelsi, No. CR 06-89 (RWR), 2015 WL 5175882, at *1 (D.D.C. Sept. 3, 2015), the court ordered the government to produce ex parte and in camera certain communications between the United States and Belgium, as the defendant had stated a specific and articulable allegation regarding his extradition from Belgium.[6] Following that ex parte and in camera review, the court declined to order the government to produce those communications to the defendant. In this case, as discussed above, the defendant has failed to articulate any basis for disclosure of the Requested Documents. And, even if the defendant could do so here, the Requested Documents are not discoverable in light of Garavito-Garcia and Suarez. See Section I.A.ii. supra.

These narrow instances, in which the government has provided extradition documents as a discretionary matter so that, in many cases, the parties can engage in meaningful plea negotiations and, perhaps, spare the victims from testifying, do not establish that the government has a mandatory discovery obligation. As such, the Court should reject this argument.

C. The Requested Documents are Protected Attorney Work Product under Rule 16(a)(2)

The defendant argues that the Requested Documents are not exempt from disclosure under Rule 16(a)(2), because they were shared with the Government of Mexico; thus, they are not "internal" within the meaning of the Rule. See Def. Br. at 5. This Rule, however, should not be interpreted so narrowly.

Rule 16(a)(2) precludes disclosure of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." This rule is designed to shield government attorney work product from disclosure to the defense. See In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003) ("In re

---

[5] Moreover, while there are limited instances in which this office has produced some of the extradition documents as a courtesy, such as the AUSA and agent affidavits and heavily redacted witness declarations, there are no instances where this office has provided the litany of documents requested by the defendant.

[6] The defendant misstates the holding in Trabelsi, see Def. Br. at 5, as the Court did not order the government to produce the documents to the defendant, but instead, ordered the government to provide them to the court for an ex parte and in camera review.

Grand Jury Subpoenas"); United States v. Cherry, 876 F. Supp. 547, 551 (S.D.N.Y. 1995); Fed. R. Crim. P. 16, advisory committee's note to 1974 amendment (noting that, under this rule, "the work product of the government attorney is protected."). The Supreme Court has described the purpose of this rule as follows:

> In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel . . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed . . . as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

In re Grand Jury Subpoenas, 318 F.3d at 384 (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). "Although the doctrine is most frequently asserted as a bar to discovery in civil litigation, the Supreme Court has characterized its 'role in assuring the proper functioning of the criminal justice system' as 'even more vital.'" Id. (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).

In Cherry, the court extended the protection of Rule 16(a)(2) to reports prepared by local law enforcement officers provided to federal law enforcement agents. In doing so, the court recognized that the rule could be read narrowly to protect only documents generated by federal law enforcement officers, but not local authorities. See 876 F. Supp. at 551. But it rejected such a narrow interpretation of the work-product doctrine encompassed in Rule 16(a)(2), stating that "[o]ne should hesitate to eviscerate so important a principle, particularly where the language of the rule does not explicitly require it." Id. Instead, the court gave the rule the "broader reading because it vindicate[d] the underlying legal principle," while the "narrow reading serve[d] no countervailing public policy," and the defendant's purpose in advancing the narrow reading was "simply to gain access to the government's entire file." Id.; see also United States v. Robinson, No. 16-CR-545(S-1)(ADS)(AYS), 2017 WL 1331274, at *3 (E.D.N.Y. Apr. 10, 2017) (collecting cases holding that reports generated by local and state law enforcement agents fall under the rule).

Here, applying Rule 16(a)(2) to the Requested Documents, which include confidential, non-public communications with the Government of Mexico, would vindicate the rule's underlying purpose to shield the work product of government attorneys from defense counsel. For example, the government's request for the ROS Waiver contains affidavits from

an AUSA, a law enforcement agent and cooperating witnesses, all of which were prepared by government attorneys in an effort to secure the defendant's extradition. Those documents amount to a detailed road map of the government's case, akin to an order of proof with an outline of the direct examinations of some of its key witnesses. The affidavits identify witnesses, highlight key pieces of evidence that the government views as important and present the government's theory of the case. These are precisely the type of documents that are meant to be shielded from disclosure by the work-product doctrine. See United States v. Ghailiani, 687 F. Supp. 2d 365, 369 (S.D.N.Y. 2010) (stating that document characterized as "order of proof" related to defendant's case not subject to disclosure).

At the time they were drafted and finalized by the government, these documents clearly qualified as "internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case" under Rule 16(a)(2). The only question is whether the work-product doctrine ceased to apply to such internal government documents once the government transmitted them to a foreign government to request the defendant's extradition. By its terms, Rule 16 does not answer that question. A broad reading of the rule that protects those communications would give effect to the rule's purpose to shield work product from disclosure. The narrow reading advocated by the defendant serves no countervailing public purpose and is advanced only in an effort to obtain access the government's work product. See Cherry, 876 F. Supp. at 551.

D. Certain of the Requested Documents are Not Within the Government's Possession, Custody and Control under Rule 16(a)(1)(E)(i)

The defendant argues that the government should produce all of the Requested Documents because they are within the "prosecution team's" control. Def. Br. at 6. In support of his position, and without citing any authority, the defendant attempts to expand the definition of "prosecution team" by the mere fact that the prosecutors in the case requested the defendant's extradition with the assistance of other agencies and offices. Id. While the defendant asks the court to look at the "degree of involvement" between the various parties, it argues without basis that participating in the extradition process de facto makes any entity a member of the prosecution team. This is a highly fact-specific inquiry that goes beyond the conclusory allegations in the defendant's filings. See Simone v. United States, 642 Fed. Appx. 73, 75 (2d Cir. 2016) (summary order) (concluding that OIA attorneys and staff are not investigative or law enforcement officers); see also United States v. Barcelo, 628 Fed. Appx. 36 (2d Cir. 2015) (summary order).[7] Nevertheless, the Court does not need to address this

[7] The State Department and OIA's involvement in this case was related to serving as the liaison between the United States and Mexico for purposes of extradition, not "investigation" or "prosecution" of the offense. Of course, extradition is neither investigation nor prosecution; the Executive's specialized extradition authority is conceptually distinct from its other powers, and is exercised only within the relatively narrow confines of the Presidency and State Department. Plaster v. United States, 720 F.2d 340, 354 (4th Cir. 1983) (noting that although power to extradite is constitutionally reserved to the Executive, "[t]he 'Executive' . . . cannot be construed so broadly as to include all officers of the executive

issue. As demonstrated above, see Section I.A.ii. supra, the defendant has failed to establish that any of the Requested Documents are material to the defense, and the Requested Documents are internal government documents not subject to disclosure. As such, the defendant is not entitled to these documents, regardless of whether the government has custody and control of them.

The defendant also requests documents in the custody and control of the Government of Mexico. Def. Br. at 6 n.5. As its only basis for this claim, the defendant concludes, without support, that this was a joint investigation between the United States and Mexico. First, any of the Requested Documents in possession of the Government of Mexico would be duplicative of documents in possession of the government. Thus, there is no reason for the government to seek those documents from the Government of Mexico. Second, the Second Circuit has clearly held that the United States's solicitation of the assistance of a foreign government in the arrest of a fugitive within its borders is insufficient as a matter of law to constitute United States participation in a joint investigation, noting that U.S. law enforcement officers are not required to "monitor the conduct" of foreign officials who execute a request for extradition or expulsion. United States v. Lira, 515 F.2d 68, 71 (2d Cir. 1975). The defendant's argument thus lacks merit.

## II. Section 3500 Precludes Disclosure of Certain of the Requested Documents

The defendant argues that the Court has the authority to order early disclosure of the Requested Documents that qualify as § 3500 material. See Def. Br. at 7. But that is not the law. In fact, the defendant's argument squarely contradicts established Second Circuit precedent. See United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) (granting writ of mandamus to vacate district court decision to order early disclosure of § 3500 material, which did not constitute material Brady/Giglio evidence); In re United States of America, 834 F.2d 283, 287 (2d Cir. 1987) (granting writ of mandamus to vacate order requiring production of § 3500 material); United States v. Percevault, 490 F.2d 126, 131 (2d Cir. 1974) (same). Thus, his motion for early disclosure of § 3500 material should be denied.

As discussed above, a defendant is entitled to discovery of documents within the government's possession, custody and control that are material to the defense. Fed. R. Crim. P. 16(a)(1)(E)(i). Rule 16, however, contains an important limitation. It does not "authorize the discovery or inspection of statements made by prospective government

---

branch of government," but is reserved to the President and the Secretary of State); see also In re Requested Extradition of Kirby, 106 F.3d 855, 867 (9th Cir. 1996) (Noonan, J., dissenting from assumption of jurisdiction) (noting that extradition proceedings are not criminal in nature and that "no guilt or innocence is determined in them"); Fed. R. Evid. 1101(d)(3) advisory committee's note to 1972 Proposed Rules (extradition proceedings are "essentially administrative in character").

witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2).[8] Section 3500 "is the exclusive vehicle for disclosure of statements made by government witnesses." Percevault, 490 F.2d at 128-29 (citation omitted). And, unlike Rule 16, which provides for pre-trial disclosure of the materials covered, § 3500 requires disclosure only "after the witness has testified at trial." Id. at 129. The Second Circuit has explained, "[t]his unique but limited discovery device [§ 3500] represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial." Id. Indeed, the court recognized that Congress enacted § 3500, in part, to protect witnesses from tampering and intimidation. See In re United States of America, 834 F.2d at 287 (stating that, in enacting § 3500, Congress sought to ensure "that witnesses in organized crime cases are produced alive and unintimidated before grand juries and at trial"); Percevault, 490 F.2d at 131 ("Fear of intimidation of witnesses and concern over efforts to suborn perjury were not flights of fantasy by those who drafted Rule 16."). Thus, "[a]lthough Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." Id. at 130.

Pursuant to these principles, the Second Circuit has repeatedly held that district courts lack "statutory authority to compel disclosure [of prospective witness statements], over the government's objection, prior to trial." Id. at 129; see also Coppa, 267 F.3d at 145 ("We have previously held that Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements."); In re United States of America, 834 F.2d at 287 ("[W]e hold that, as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of the Act.").

Here, the Requested Documents the defendant seeks include § 3500 material that is not subject to disclosure prior to trial. In particular, the Requested Documents sought by the defendant include (1) affidavits by a law enforcement agent and cooperating witnesses that were submitted in support of the government's request for the ROS Waiver; (2) summaries of the witness affidavits set forth in the ROS Waiver; (3) affidavits by law enforcement agents and cooperating witnesses that were submitted in support of the Extradition Packages; and (4) the transcripts of the grand jury proceedings underlying the defendant's indictment and superseding indictments in this case, as well as in the cases pending in the SDCA and the WDTX. These materials are prospective witness "statements" under § 3500, which are not subject to disclosure prior to trial. See 18 U.S.C. § 3500 (defining statement to include "a written statement made by said witness and signed or otherwise adopted or approved by him" and "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury"); In re United States of America, 834 F.2d at 286 (noting that co-conspirators, informants and law enforcement agents qualify as "witnesses" under § 3500).

---

[8] See 18 U.S.C. § 3500 (stating that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case").

In urging otherwise, the defendant argues that Coppa permits the district court to order early disclosure of § 3500 material, in its discretion, "as a matter of sound case management." Def. Br. at 7 (citing Coppa, 267 F.3d at 146). Coppa, however, does not stand for that proposition. To the contrary, in that case, the Second Circuit specifically held that the district court does not have the authority to order production of § 3500 material prior to trial. See Coppa, 267 F.3d at 145-46. The Second Circuit concluded, though, that the district court could order early disclosure of § 3500 material that also qualified as Brady/Giglio evidence, if such evidence was "material" under the Supreme Court's decisions in United States v. Bagley, 473 U.S. 667 (1985) and United States v. Agurs, 427 U.S. 97 (1976).[9] The Second Circuit recognized that the Constitution compelled disclosure of material Bradly/Giglio evidence, despite § 3500, "in time for its effective use" by the defense. Id. at 144-47. But the district court lacks authority to order early disclosure of other § 3500 material, "including those witness statements that, although they might indeed contain impeachment evidence, do not rise to the level of materiality prescribed by Agurs and Bagley for mandated production." Id. at 146. The court declined to express an opinion as to how early a district court may order disclosure of material Brady/Giglio evidence, reserving decision on the "scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." Id.

The affidavits contained within the Requested Documents do not fall within the narrow exception to § 3500 created by Coppa, as they do not contain material Brady/Giglio information. Thus, disclosure of the affidavits cannot be compelled. In any event, the government is aware of its Brady/Giglio obligations and will disclose any such evidence, to the extent it exists, sufficiently in advance of trial for effective use by the defense. At this point, though, the parties are eleven months away from the trial date set by the Court. In light of the significant concerns for witness safety in this case (discussed further below), disclosure of Giglio impeachment evidence, which would necessarily disclose the identities of the government's witnesses to the defense, is not appropriate this far in advance of trial. See, e.g., United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); United States v. Yu, No. 97 CR 102 (SJ), 1998 WL 57079, at *5 (E.D.N.Y. Feb. 5, 1998) ("Brady material of an impeachment nature, commonly referred to as Giglio material, is not required to be produced before trial.")

## III. Grand Jury Minutes are Not Discoverable under Rules 16 and 6

In his brief, the defendant maintains his request for the transcripts of the grand jury proceedings underlying the defendant's indictment and superseding indictments in this case, as well as in the cases pending in the Southern District of California and the Western District of Texas. See Def. Br. at 1 n.1. But he failed to even respond to the government's argument in its April 28, 2017 letter that the defendant had not met his burden to justify

---

[9] Those cases held that "material" Brady/Giglio evidence is that which, "if disclosed, would have had a reasonable probability of changing the outcome of the proceedings." Coppa, 267 F.3d at 144.

disclosure under Rule 6(e)(3)(E)(ii). See Dkt. No. 69 at 6. For that reason alone, the Court should deny the defendant's motion in this regard. In addition, the government did not submit grand jury transcripts to Mexico in connection with the Extradition Packages or the government's request for the ROS Waiver. Thus, these transcripts have no bearing on the defendant's motion to dismiss the indictment, and they are immaterial under Rule 16. For that reason too, his motion should be denied.

## IV. Disclosure of the Requested Documents Creates a Security Risk to Government Witnesses

While the defendant continues to dismiss any security concerns in this case, see Def. Br. at 7, in its various ex parte filings, the government has laid out legitimate and serious safety concerns regarding potential witnesses in this case. See Gov't Ex Parte Submissions, Dkt. Nos. 31, 44, 66 and 78. The Sinaloa Cartel's retaliation against those it suspects of collaborating with the government is likewise documented in these filings. Id. Notwithstanding the reasonable restrictions under the Special Administrative Measures ("SAMs"), the defendant is not cut off completely from the outside world. Likewise, the reach of the defendant's cartel is not restricted under the SAMs.

Neither the SAMs nor the protective order can guarantee that these potential witnesses will not face any security concerns if the information in the Requested Documents is disclosed to the defendant at this time.[10] The only thing that can ensure and guarantee their protection is if the information is yet not provided.

---

[10] The government recognizes that some of these witnesses' names eventually will be disclosed to the defendant, if they testify at trial. Nonetheless, the defendant is not entitled to the government's witness list at this time, eleven months away from the trial date, given the potential for witness tampering and intimidation here. See United States v. Baccollo, 725 F.2d 170, 172-73 (2d Cir. 1983); United States v. Cannone, 528 F.2d 296, 301-03 (2d Cir. 1975); United States v. Failla, No. CR 93 00294 (CPS), 1993 WL 547419, at *9 (E.D.N.Y. Dec. 21, 1993).

V. Conclusion

For the foregoing reasons, (1) the Requested Documents are not discoverable under Federal Rule of Criminal Procedure 16; (2) certain of the Requested Documents are exempt from discovery under 18 U.S.C. § 3500; and (3) the grand jury minutes sought as part of the Requested Documents are not discoverable under Federal Rules of Criminal Procedure 6 and 16. Accordingly, the Court should deny the defendant's motion.

Respectfully submitted,

BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

BENJAMIN GREENBERG
ACTING UNITED STATES ATTORNEY
Southern District of Florida

cc. Michelle Gelernt, Esq.
Michael Schneider, Esq.
Edward Zas, Esq.