Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 26, 2017

**BY E-MAIL AND ECF**

Ms. Patricia Notopoulos, Esq.
Ms. Andrea Goldbarg, Esq.
Ms. Michael Robotti, Esq.
Mr. Hiral Mehta, Esq.
Mr. Adam Fels, Esq.
Ms. Amanda Liskamm, Esq.
Mr. Anthony Nardozzi, Esq.
Ms. Lynn Kirkpatrick, Esq.
Mr. Michael Lang, Esq.
United States Attorney's Office
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Joaquin Archivaldo Guzman Loera, 09 CR 466 (BMC)**

Dear Prosecution Team:

We are in receipt of your unsigned letter dated May 24, 2017 ("Govt. Let."), where you propose what you call "modifications" that would, in your words, "protect [Mr. Guzman's] Sixth Amendment rights."[1] (Govt. Let. at 1). The "electronic discovery review system" you refer to in your letter is entirely inadequate to allow Mr. Guzman to review the voluminous discovery in this case with the rest of the defense team. The "system" was inadequate on May 5, 2017, when Ms. Gelernt raised the issue with Judge Cogan, and it remains inadequate to this day. Your assertion that Ms. Gelernt provided an "inaccurate" description to the Court of how the defense team has been forced to review discovery is wrong (and personally offensive).[2] The "accommodations" you

---

1 It is not clear to us why these "modifications" were not proposed by you during our phone call earlier this week, but were instead proposed by letter filed on the public docket. Whatever the reason for your decision to proceed in such a manner, we feel constrained to respond in a similar way.

2 The defense team is so convinced of the constitutional inadequacy of the "system" that Ms. Gelernt asked, both during the May 5 court appearance and the May 10 teleconference, that Judge Cogan or Magistrate Judge Mann visit 10 South personally to see and experience the deficient "system" for reviewing discovery. In fact, Ms. Gelernt specifically suggested to Judge Mann that she

describe in your letter are in no way sufficient to address the violations of Mr. Guzman's constitutional rights posed by the conditions of his confinement generally and the nature of legal visiting specifically.

As we have noted in other filings, we believe that Mr. Guzman's prosecution in this district violates the conditions set by the Mexican government when it agreed to extradite Mr. Guzman. Though we are not privy to the government's decision-making process, it appears that the choice to bring Mr. Guzman to New York City, rather than to the districts to which the Mexican government actually granted extradition, was influenced by the opportunity to hold Mr. Guzman at 10 South (where a sign boasts upon entry that it is the "strongest" specialized housing unit.) This choice has resulted in conditions of confinement that violate Mr. Guzman's Sixth Amendment rights to counsel and to prepare and present a defense.[3]

Having requested the SAMs in the first place, you must be aware that they specifically allow contact visits with counsel. *See* SAMs § 2(c). Your continued opposition to contact visits appears to be based on the same general representations about Mr. Guzman's alleged offense conduct presented to the Acting Attorney General in order to secure the SAMs. Your failure to explain the specific safety concerns posed by Mr. Guzman sitting with his attorneys in a locked counsel visit room in full view of the BOP staff indicates that no such concerns exist.[4]

Because the SAMs allow for contact visits, it is our position that it is your obligation to demonstrate that contact visits with counsel cannot safely occur. It should not be Mr. Guzman's burden to respond to the endless piecemeal modifications of visiting protocols—none of which adequately address his ability to prepare his defense. Further, that the conditions under which Mr. Guzman is held violate the Sixth Amendment should not be a surprise to you. In at least two recent high-profile cases, the government and BOP have recognized that contact visits with counsel are constitutionally required.

In the prosecution of Kaboni Savage, which resulted in multiple death sentences, the prosecution and BOP agreed that the Sixth Amendment required contact visits between Mr. Savage

---

visit 10 South personally prior to the filing of briefs, so that the Court would not have to rely on the parties' descriptions of the visit area. Thus, the implication in your letter, filed on the public docket, that there was an effort on the part of the defense team to misrepresent the inadequacies of the visit area is false.

3 In addition to violating his right to counsel, we maintain that Mr. Guzman's current conditions of confinement also violate his Fifth Amendment right to Due Process and his First Amendment rights to free speech and to exercise religious beliefs.

4 As you are aware, since his incarceration in the United States, Mr. Guzman has not been accused of any disruptive or threatening behavior. He has conducted himself appropriately while in solitary confinement at 10 South as well as at each of his three court appearances. Additionally, Mr. Guzman behaved completely appropriately on February 3, 2017, when, directly after the status conference, the US Marshals Service allowed defense counsel and representatives of the Mexican consulate to have a brief contact visit in the pens at the courthouse.

and his counsel. *See United States v. Savage 2010 WL 4236867* at *2 (E.D. Pa. Oct. 21, 2010). The accommodation approved in the *Savage* case was to transport him from MCC Manhattan to Philadelphia, where he could have contact visits with his attorneys. *Id.*

In the prosecution of Vincent Basciano, Magistrate Judge Levy found that the conditions of confinement at 10 South, particularly the prohibition of contact visits with counsel, violated the Sixth Amendment. Magistrate Judge Levy held that Basciano, who was alleged to have sought the murder of both the judge presiding in his case and the prosecutor in charge of the prosecution, had "presented substantial evidence that the requirement of non-contact visits with his attorneys infringes upon his right to counsel and is an exaggerated response to the government's security concerns." *Basciano v. Martinez*, No. 07 CV 421(NGG)(RML), 2007 WL 2119908, at *8 (E.D.N.Y. May 25, 2007), *report and recommendation adopted sub nom. Basciano v. Lindsay*, 530 F. Supp. 2d 435 (E.D.N.Y. 2008). After Magistrate Judge Levy issued his report and recommendation in the *Basciano* case, but before Judge Garaufis could rule on the report, the government had Mr. Basciano transferred to the MDC where he could have contact visits with his attorneys. *Basciano v. Lindsay*, 530 F. Supp. 2d 435, 437 (E.D.N.Y. 2008).

Attorneys and other members of the defense team have been allowed to meet with Mr. Guzman in three separate spaces. Two of these spaces consist of a booth, divided in half by a wall. The portion of the wall that allows for communication is one-half plexiglass and one-half metal screen. It is impossible to pass papers between the two sides of the booth, without requiring the assistance of the unit staff each and every time a document has to be passed. No more than three people can fit in the visitor portion of the booth. The only table in the visitor portion of the booth is an approximately two foot square surface that folds out from one wall. The inmate portion of one booth contains a computer contained in a metal cage. The inmate portion also has a small ledge where Mr. Guzman can rest papers. The ledge is too small to comfortably support a laptop computer during use.

The third space, apparently the space the government alleges is sufficient to prepare for trial, has a larger area for visitors which can accommodate perhaps five people. When in this space, Mr. Guzman is locked in one of several cages along one wall of the room. While in the cage, Mr. Guzman can see his visitors only through a plexiglass window in the cage's door. The plexiglass windows is approximately eight-and-a-half inches wide. The plexiglass is scratched and dirty. On either side of the plexiglass is a metal screen, each about four-and-a-half inches wide. The plexiglass window and metal screens are placed too high above the door for a seated person to see through. Often, a visiting member of the defense will stack several plastic chairs so he or she can sit high enough to see through the window. We were recently informed by BOP staff that visiting AUSAs directed them to remove the plastic chairs. Now the room contains rolling chairs which cannot be stacked. Until the week of the May 5, 2017 status conference, Mr. Guzman was required to stand while in his cage in order to see counsel on the other side of the door, so defense counsel chose to use the other visit booths whenever possible. Additionally, prior to the May 5 status conference, defense counsel was not informed that the defense team could use the computer or monitors in the third space to review discovery.

While there are two monitors in this visit area, one on a movable cart and the other mounted to the wall, only the monitor mounted to the wall can presently be used to review discovery. This monitor is several feet away from the plexiglass window, even when the arm mount

is extended. It is too far away for Mr. Guzman to read something on the screen. Even if it could be moved close enough to the plexiglass window for Mr. Guzman to read something on the screen, it would then be exceedingly difficult for visitors to view the screen.

While Mr. Guzman may bring a laptop computer to the visiting booths, once inside there is no table or desk for him to rest it on. He must balance it on his lap while trying to manipulate the touchpad and then hold it up and turn it around if he wants to show the visitors what's on the screen. Also, because of the format of the discovery you provided, it is not always a simple task to access a particular page from the discovery. Often this will involve opening another file on a disc, or replacing a disc in the computer's drive.

We are aware that members of the prosecution team visited 10 South on Monday. We are disturbed that, even after this visit, your letter misrepresents the ability of the defense team and Mr. Guzman to prepare for trial. Further, your letter also misrepresents communications from the MCC staff regarding the review of discovery. The government alleges that the defense team was informed that we are permitted to provide Mr. Guzman with a 4-inch stack of documents at each counsel visit. However, no member of the defense team recalls being so informed, and a review of correspondence with the MCC did not locate any such communication. Much like your earlier assertion to the Court that Mr. Guzman had been provided with Spanish-language commissary forms when he had not been, this claim is inaccurate.

It is not feasible for members of the defense team to anticipate every document that either Mr. Guzman or the team member will need to review in advance of a given visit during the life of this case, nor is there any reason we should be required to do so. Even if we could anticipate which documents Mr. Guzman and the visitors would need to review, handing Mr. Guzman hundreds of pages of documents would require him to balance the sheaf on his lap while trying to access any particular page. Additionally, because of the protective order and our duty to account for each printed page of protected material, we do not want to ferry hundreds of printed pages of protected material from Brooklyn to Manhattan on public transportation.

Playing audio recordings in the booths at 10 South poses another problem. The protective order prohibits anyone besides the defense team from hearing recordings marked as protected material. For both counsel and Mr. Guzman to hear a recording while separated by plexiglass and metal screens requires playing at such a volume that others on 10 South could necessarily hear what is being played.

We have been meeting with Mr. Guzman for more than four months now. We and the rest of the defense team have spent literally hundreds of hours at 10 South. Since the first discovery was produced on April 10, much of our visiting time has been spent trying to review the discovery. The setup for reviewing discovery at 10 South is completely inadequate to allow the defense team and Mr. Guzman to listen to, view, and discuss the discovery. Because of the inadequate arrangement, we often find ourselves holding documents up to the plexiglass window because there is no other way for Mr. Guzman to see a document. Your proposed modifications would lead to nothing more than the ability to hold a virtual document up to the window on a computer screen. This proposal may save arm strength, but does little to help us meaningfully prepare Mr. Guzman's defense.

These obstructions to effective review of the evidence are all the more exasperating because there is no legitimate reason for them. As we have made clear, we strongly disagree with the conclusions made by the Acting Attorney General in instituting the SAMs. Yet, even the SAMs allow for contact visits between Mr. Guzman and his attorneys. Your filings are bereft of any intimation that Mr. Guzman has ever personally committed a violent act, much less engaged in any violence while he has been incarcerated, either at 10 South or in Mexico. You have provided no reason why Mr. Guzman and his legal visitors could not sit together at a table in the third area where we could all review electronic or paper discovery effectively.

In your detention memorandum, you outlined your view of the vast nature of the charges and the alleged evidence against Mr. Guzman including, in your words, "a large coterie of cooperating witnesses." As we approach trial, you will doubtlessly be spending hundreds of hours preparing this coterie of cooperators to testify against Mr. Guzman. Many of these witnesses will be criminals who, unlike Mr. Guzman, have been convicted of serious and often violent criminal behavior. No matter the depravity of the witness's prior conduct, you won't be preparing that witness from behind a metal screen or a plexiglass window. You will be sitting across a table from him or her. In fact, if we proposed that you should communicate with each of your cooperators from one side of a no-contact booth, you would call our request absurd. It is just as absurd to expect us to meet with and prepare our client under such conditions. More than absurd, it violates Mr. Guzman's constitutional rights.

You have presented no cogent evidence or argument why the defense team should not be allowed to sit at a table with Mr. Guzman to review the voluminous discovery in this case. After being presented with your allegations against Mr. Guzman, the Acting Attorney General found that contact visits between Mr. Guzman and his defenders are appropriate. In other cases involving allegations of shocking violence and threats of murder and mayhem orchestrated while in BOP custody, the government acknowledged that the conditions at 10 South violate the right to counsel. Here we ask you to do the same and allow us forthwith to meet with Mr. Guzman in the same room, around a table.

Thank you for your attention to this matter.

Respectfully,

/s/

Michael K. Schneider
Edward S. Zas, Esq.
Michelle Gelernt, Esq.

cc: Clerk of the Court [by ECF]
Mr. Joaquin Guzman