Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 29, 2017

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Joaquin Archivaldo Guzman Loera, 09 CR 466 (BMC)**

Your Honor:

We write in response to the government's May 18, 2017 letter requesting "clarification" of the Court's May 4 and May 8, 2017 orders.[1] (*See* Dkt. No. 77.) Specifically, the government requests clarification regarding the need for firewall counsel to: (1) vet the defendant's non-legal visitors; (2) screen written communications with the defendant's family, including his wife, Emma Coronel Aispuro; and (3) vet attorneys and paralegals seeking retention by the defendant. (*Id.* at 1.) The government alleges that it has received "new information" that may cause the Court to revisit its earlier rulings regarding the screening of Mr. Guzman's visitors and communications. This "new information" was provided to the Court via *ex parte* letter. *Id.*[2]

While the government frames its May 18 letter as a request for "clarification," the government, in reality, seeks reconsideration of the Court's order requiring firewall counsel to take over the vetting of Mr. Guzman's visitors at the MCC and preventing the prosecution team from participating in the screening of the defendant's communications.

For the reasons set forth below, the government's request should be denied. The Court should adhere to its May 4 order requiring firewall counsel to vet all visitors to the MCC and all potential member of defendant's legal team. Moreover, for the reasons stated in defendant's motion, filed May 29, 2017, the defense objects to the government's practice of filing *ex parte* submissions without prior approval from the Court or notice to defense counsel. (*See* Dkt. No. 86.) The practice of resorting to *ex parte* submissions—essentially private communications between the prosecutors and the Court— is unfair, taints the appearance of transparency and judicial impartiality, undermines the right to a public trial, and violates Mr. Guzman's right to Due Process and to the effective assistance of counsel.

---

1 *See* Dkt. No. 71 and Dkt. No. 74.

2 Citing Fourth *Ex Parte* Submission.

The Court's May 4 order explicitly found that "it is a reasonable extension of firewall counsel's responsibility to handle the vetting of all visitors to the MCC." (*See* Dkt. No. 71 at 16.) The Court then ordered that firewall counsel "take over visitor vetting at the MCC…." (*Id.* at 18.) The Court's May 8 order did not alter the use of firewall counsel to vet visitors to the MCC, or to vet attorneys or paralegals seeking retention by the defendant. (*See* Dkt. No. 74.).[3]

Thus, no "clarification" of the Court's orders is necessary. Nor is reconsideration warranted. A party moving for reconsideration must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). A motion for reconsideration may not, however, "be used as a vehicle to advance new theories or adduce new evidence in response to the court's rulings." *Chin v. U.S. Postal Service*, 2009 WL 3174144, at *1 (E.D.N.Y. Oct.1, 2009) (internal quotations and citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied." *Shrader*, 70 F.3d at 257. Moreover, a motion to reconsider should be denied "where the moving party seeks solely to relitigate an issue already decided." *Id.*

The government does not even attempt to meet this "strict" standard. The prosecution team merely wants to be able to take advantage of the fact that Mr. Guzman is incarcerated—under extraordinarily restrictive condition—to learn who is visiting him and to glean the substance of his communications. While that information may not be legally privileged, the government should not be allowed to gain a litigation advantage. Any safety concerns can be fully monitored and addressed by firewall counsel.

To the extent that the Court determines clarification is necessary, for the reasons set for below, the Court should make clear that all visitor vetting and screening of Mr. Guzman's communication should be performed by firewall counsel. Should firewall counsel indicate it needs assistance, additional firewall counsel or firewall agents may be designated. It is worthy of note that firewall counsel itself has not expressed any concerns to the Court.

The SAMs themselves do not specify that the prosecution team (rather than firewall counsel) should vet visitors or screen communications. The stated purpose of the SAMs is to address what the attorney general determined to be a substantial risk that Mr. Guzman's "communications or contacts with persons could result in death or serious bodily injuries to persons." While the government points out that all pretrial detainees, regardless of SAMs, are subject to the prosecution's monitoring of their email and telephonic communication, non-SAMs inmates are not subject to the monitoring and recording of their in-person, non-legal visits. Thus, while the SAMs impose this additional requirement, there is no security reason why this task has to fall to the prosecution team, rather than firewall counsel. The SAMs were imposed to address safety concerns, not to provide the prosecution team with an investigative tool or an unfair advantage. Thus, this screening should be performed by the firewall counsel.

---

[3] While the May 8 order notes that information concerning defendant's non-legal visits is not privileged it does not alter the May 4 order directing that firewall counsel assume responsibility for visitor vetting at the MCC.

The government relies on *United States v. Mohamed*, in support of its position that the prosecution team, rather than firewall counsel, should screen Mr. Guzman's communications. *United States v. Mohamed*, 103 F.Supp. 3d 281, 288 (E.D.N.Y. 2015.) However, the decision in *Mohamed* is silent as to the use of firewall counsel. A review of the underlying motion papers indicates that defense counsel did not request that such screening be assigned to firewall counsel. The government's reliance on *Mohamed* is therefore misplaced.

Additionally, the prosecution team argues that it should be allowed to vet non-legal visitors and attorneys and paralegals seeking retention by Mr. Guzman. It contends that the government does not gain access to any privileged information and the identity of visitors is information it could readily obtain from the visitor logs at the jail. (Dkt. No. 77 at 4.) However, this misrepresents the nature of the additional information the government obtains when vetting a visitor for SAMs clearance. All of Mr. Guzman's visitors have to submit themselves to additional screening requirements, providing their dates of birth, social security numbers and/or other private identifying information in order to obtain SAMs clearance. This information is clearly not available from the visitor logs and there is no reason why the prosecution team should have access to it.

The government also argues that, because the Court found it unnecessary to designate firewall agents in addition to firewall counsel to screen Mr. Guzman's messages, the prosecution team itself should be permitted to screen Mr. Guzman's messages. First, in denying the defense request for firewall agents, the Court specifically noted that firewall counsel were available to screen messages. Additionally, to the extent that the government argues that firewall teams typically include firewall agents, the government's argument supports the designation of firewall agents to assist firewall counsel in screening Mr. Guzman's communications as well as in their other designated tasks.

The government's repeated claim that firewall counsel are somehow incapable of vetting visitors and/or screening Mr. Guzman's communication is meritless. This case presents a unique set of circumstances. As the Court has previously noted, Mr. Guzman has indictments pending in several other districts. (*See* Dkt. No. 51 at 5.) The Court granted the government wide latitude in the selection of its firewall counsel.[4] Noting that the Eastern District office was not the only office with knowledgeable AUSA's, the Court suggested that the government could select as firewall counsel members of the prosecution teams from other districts where charges are pending. The Court also proposed that the government could remove a member of the current prosecution team and appoint him or her as firewall counsel.[5] (*Id.*)

In selecting firewall counsel, the government chose Assistant United States Attorneys who possessed intimate knowledge of the government's investigation into Mr. Guzman. AUSA Walter Norkin, of the Southern District of Florida, AUSA Marcia Henry of the Eastern District of New York, and Adrian Rosales, a Trial Attorney at the U.S. Department of Justice's Narcotics and Dangerous Drugs Section. As noted by the Court in the May 4 order, Mr. Norkin was a member of

---

4 The Court also permitted the government to provide firewall counsel with information regarding persons of concern.

5 There are currently 10 noticed government attorneys on the prosecution team.

the original prosecution team who indicted Mr. Guzman in this district. Tellingly, the government neglected to inform the Court of this fact when it first raised concerns about firewall counsel's ability to vet visitors and screen communications.[6] Further, Mr. Norkin is not the only member of the firewall team with experience and knowledge of the government's investigation into Mr. Guzman. Mr. Rosales and Ms. Henry were co-counsel with current prosecution team members Andrea Goldbarg and Amanda Liskamm in *United States v. Alfredo Beltran Leyva*, 12-CR-0184 (RJL) (District of Columbia.).[7] Given the government's continued lack of candor regarding the nature and extent of firewall counsel's knowledge and involvement in this case, the Court should treat its professed concerns with great skepticism.

The government had the option to select firewall counsel from either its own prosecution team or another team currently prosecuting Mr. Guzman. To the extent that it chose not to, any deficiency in the abilities of firewall counsel is a situation of the prosecution's own making. Were the Court to find that the government has demonstrated any real concerns, those concerns may be addressed by designating an additional firewall counsel more familiar with the case rather than by allowing the prosecution team to become a spy in the defense camp. *See United States v. Yousef*, 327 F.3d. 56, 166 (2d. Cir. 2003).

Moreover, the government's history of infringing on Mr. Guzman's right to counsel further justifies this Court's original determination that firewall counsel and not the prosecution team should vet Mr. Guzman's visitors at the MCC, and screen Mr. Guzman's communications. The prosecution has demonstrated a fundamental lack of respect for Mr. Guzman's right to privileged confidential communication with counsel. The prosecution team has already acknowledged

---

[6] Counsel for the defendant alerted the Court to Mr. Norkin's role in the investigation and prosecution of Mr. Guzman in this District in its Reply to Response in Opposition to it Motion to Vacate the SAMs. (*See* Dkt. No. 61 at 7) *citing* Department of Justice, Office of Public Affairs press release, *Ten Alleged Mexican Drug Cartel Leaders Among 43 Defendants Indicted in Brooklyn and Chicago as Part of Coordinated Strike Against Mexican Drug Trafficking Organizations,* August 20, 2009. The government has also failed to inform the Court that Mr. Norkin was appointed Chief of the Narcotics Division for United States Attorney's Office for the Eastern District of New York in 2012.

[7] Alfredo Beltran Leyva was sentenced to life imprisonment on April 5, 2017 after his guilty plea to conspiracy to import narcotics to the United States. The government has long alleged that Alfredo Beltran was a member of the Beltran Leyva Organization ("BLO") an offshoot of the Sinaloa Cartel of which the government alleges Mr. Guzman is the leader. His brothers, Arturo and Hector Beltran Leyva were co-defendant's of Mr. Guzman on the original indictment, 09 CR 466. According to press reports, "[b]oth El Mochomo and El Chapo face an overlapping list of cooperating government witnesses and U.S. prosecutors, Assistant U.S. Attorney Andrea Goldbarg of Brooklyn, and her successor as deputy chief of the Justice Department's Narcotics and Dangerous Drug Section, Amanda Liskamm." *See* Washington Post, *Kingpin, ex-ally of 'El Chapo' Guzmán, whose arrest set off Mexico's drug war, sentenced to life in prison in U.S.;* April 5, 2017; available at https://www.washingtonpost.com/local/public-safety/kingpin-ex-ally-of-el-chapo-guzman-whose-arrest-set-off-mexicos-drug-war-to-be-sentenced-in-us/2017/04/05/5fae48b2-194a-11e7-9887-1a5314b56a08_story.html?utm_term=.2ecbd7f9dac2

engaging in conversations with MCC staff regarding the content of Mr. Guzman's legal visits. The prosecution team then compounded its violation of Mr. Guzman's rights by including this information in a filing on the public docket. This episode demonstrates at best a profound lack of understanding, and at worst, an utter disregard for Mr. Guzman's right to counsel.[8]

For the above reasons, the defendant respectfully submits that the government's request should be denied. The Court should adhere to its May 4 order requiring firewall counsel to vet all visitors to the MCC and all potential member of defendant's legal team.

Respectfully submitted,

/s/

Michelle Gelernt, Esq.
Michael K. Schneider, Esq.
Edward S. Zas, Esq.

cc: Clerk of the Court [by ECF]
AUSA Patricia Notopoulos, Esq.
AUSA Andrea Goldbarg, Esq.
AUSA Michael Robotti, Esq.
AUSA Hiral Mehta, Esq.
Mr. Joaquin Guzman

---

8 The Court ordered: "The prosecution is ordered to cease any communications with MCC staff where the MCC staff reports the content of legal visits based on staff observations. Those reports from the MCC may continue, but they have to be made to firewall counsel, not the prosecution team." (Dkt. No. 71 at 17.)