**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMP:ASF
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 10, 2018

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joaquin Archivaldo Guzman Loera
Criminal Docket No. 09 466 (S-4) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter to notify the Court regarding potential conflicts of interest involving Jeffrey Lichtman, Esq., who recently filed a notice of appearance as counsel of record for the defendant, Joaquin Guzman Loera. See Dkt. No. 289. As set forth below, the government advises the Court of these circumstances pursuant to its obligations under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982) ("Curcio"). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995). The government requests that the Court conduct an inquiry of the defendant at the status conference scheduled for September 20, 2018 to allow the defendant to make an informed decision regarding his representation.

I. Applicable Law

A. Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

B. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163), aff'd, United States v. Genua, 274 F. App'x 53 (2d Cir. 2008).

C. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio, 680 F.2d at 881. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

D. Prior Representation of Government Witness/Coconspirator

An attorney's representation of a government witness or a coconspirator presents an inherent conflict of interest. Iorizzo, 786 F.2d at 57; Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's duties to a former client"). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to her by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore, "unless the client waives these obligations, the attorney's representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295. Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of a firm. E.g., Jiang, 140 F.3d at 127.

In other words, in representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for attorney to cross-examine his prior client because attorney is in position to use information gleaned from prior representation "either purposely or inadvertently").

The duty of loyalty to one client thus effectively precludes a lawyer from vigorously cross-examining that client or commenting on his credibility, which may be essential to the effective representation of the other client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests"—a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

E. Cumulative Prejudice

Further, in cases where, as here, numerous conflicts have been raised, "each cannot be considered in isolation, but rather must be considered together when assessing whether there is a congruence of interests between the lawyer and his client." Rahman, 861 F. Supp. at 274; see also Levy, 25 F.3d at 157.

II. Analysis

In a prior submission involving a potential conflict of interest, the government previously provided the Court with a summary of the facts germane to the Curcio inquiry, see, e.g., Jan. 27, 2017, Letter, Dkt. No. 23, and herein incorporates those facts by reference.

Mr. Lichtman has represented three potential cooperating witnesses for the government. All three potential witnesses engaged in numerous in-person negotiations with the defendant for the purchase or shipment of numerous multi-hundred kilogram loads of cocaine, and all three potential witnesses could testify about their relationship with the defendant and participation in the conspiracy over the course of several years. All three of the potential witnesses are significant drug traffickers in their own right whose identities were well-known to the defendant. The government provides further detail regarding Mr. Lichtman's potential conflicts of interest in a sealed and ex parte submission, which the government is filing simultaneously with this letter (the "Thirteenth Ex Parte Submission").[1]

---

[1] The government has shared the Thirteenth Ex Parte Submission with Mr. Lichtman and Curcio counsel Joseph Kilada, Esq., so that they can properly investigate and evaluate his potential conflicts of interest. However, because that submission contains information that could be used to identify potential cooperating witnesses, the government requests that its ex parte submission not be shared with the defendant or other members of the defense team. The government notes that it followed this procedure with respect to the Curcio hearing conducted when the Federal Defenders represented the defendant. See Tr. of May 5, 2017 Status Conf. at 11:1-8; Dkt. Nos. 65-66. It notified only the attorneys with potential conflicts of the identities of the potential witnesses.

Because of his prior representation of these government witnesses, he may not be able to ethically cross-examine these witnesses without their consent. See Massino, 303 F. Supp. 2d at 262. As the Second Circuit held in United States v. Lussier, 71 F.3d 456, 462 (2d Cir. 1995), "when a defense attorney cross-examines a former client who is a witness against the defendant, a conflict of interest may exist; absent a waiver from the former client, the attorney cannot inquire into the privileged matter." See id. An attorney cannot avoid this conflict by choosing not to cross-examine the former client. See Massino, 303 F. Supp. 2d at 262. "An attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics, is hardly an objective judge of whether that strategy is sound trial practice. Counsel's inability to make such a conflict-free decision is itself a lapse in representation." See id. (citing Malpiedi, 62 F.3d at 469).

This Court's decision in Massino is instructive. In that case, as here, the defendant's counsel had previously represented a potential cooperating witness for the government. See Massino, 303 F. Supp. 2d at 259. As part of his representation of the cooperating witness, the defendant's counsel had learned of the witness' cooperation against the defendant. Id. The Massino Court held that, because of the prior representation of the cooperating witness, the defendant's counsel could not cross-examine the cooperating witness without his consent. Id. at 262. The court found that this would hinder the defendant's legal representation, because his counsel would be unable to make certain "conflict-free" decisions. Id. This Court referred to this conflict as a "lapse in representation." Id. It concluded that this "lapse in representation" would "be particularly severe in the instant case as [the defendant] faces the death penalty." Id. at 262-63. Accordingly, this Court held that the potential conflict was unwaivable: "[i]n a situation where the stakes are so high and the penalty so grave, the court must do everything in its power to protect the accused's Sixth Amendment rights, and to secure a just and fair trial." Id. at 263.

In determining whether the defendant may waive the conflict here, the Court should also consider the severity of the charges against the defendant. For example, Count One, the CCE charge, carries a mandatory life sentence. See Massino, 303 F. Supp. 2d at 262 (disqualifying counsel and stating, in case involving death penalty, that Court "must do everything in its power to protect the accused's Sixth Amendment rights, and to secure a just and fair trial" given that "stakes were so high and the penalty so grave"). Because Mr. Lichtman may have learned privileged information from these prior representations, such information cannot be used to further the interests of his current client, the defendant, to the detriment of his former clients.

In light of the information discussed in the Thirteenth Ex Parte Submission, and based on Mr. Lichtman's previous representations of potential government witnesses and coconspirators, the government requests that the Court hold a Curcio hearing on these potential conflicts. The Curcio hearing will provide an opportunity for the defendant to consider these potential conflicts with independent counsel.

## III. Conclusion

For the foregoing reasons, the Court should notify the defendant of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise the defendant regarding his right to conflict-free representation and determine if he can waive those rights.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

ARTHUR G. WYATT, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice

OF COUNSEL:

BENJAMIN GREENBERG
United States Attorney
Southern District of Florida

cc: A. Eduardo Balarezo, Esq. (by ECF)
William Purpura, Esq. (by ECF)
Jeffrey Lichtman, Esq. (by ECF)