The New York Times Company

**David McCraw**
**Vice President &**
**Deputy General Counsel**

620 Eighth Avenue
New York, NY 10018
tel 212.556.4031
fax 212.556.4634
mccraw@nytimes.com

October 2, 2018

RECEIVED
HON. Brian M. Cogan
OCT 04 2018

**<u>VIA FEDEX</u>**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>*United States v. Beltran-Levya, et al.*, 09-cr-466 – Request for Access to *Voir dire*</u>

Dear Judge Cogan:

I write on behalf of The New York Times Company ("The Times") to respectfully request that *voir dire* in the upcoming trial of Joaquín Guzmán Loera, a defendant in the above-referenced case, be conducted in open court. We understand that the Court has indicated that it will conduct *voir dire* in chambers. However, as the Second Circuit has held, jury selection must be conducted in open court absent exceptional circumstances.[1] If the Court prefers, The Times is prepared to move for access by formal motion to intervene.

## I. BACKGROUND

Mr. Guzmán, according to prosecutors' public statements, was "the world's biggest drug dealer" until his arrest and extradition to the United States.[2] The 17-count indictment filed against him

[1] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

charges that he created and led the Sinaloa cartel, a vast criminal enterprise that manufactured and imported billions of dollars' worth of drugs into the United States. (Dkt. 14.) Mr. Guzmán and other cartel leaders are also alleged to be responsible for "hundreds of acts of violence," including murders, assassinations, and kidnappings. (*Id.*)

Jury selection for Mr. Guzmán's trial is scheduled to begin on November 5, 2018. (*See* Dkt. Entry for July 16, 2018.) As The Times understands, the Court intends to close the proceedings to the public, the press, and Mr. Guzmán; only two attorneys from each side will be permitted to be present, and potential jurors will be examined one by one. And in accordance with the Court's ruling on February 5, 2018, the selected jurors will be partially sequestered during the trial, and their names, addresses, and places of employment will not be disclosed to the press or public. (Dkt. 187.) The Court based that decision on the need for jury protection in light of Mr. Guzmán's history of violence and potential threats from other dangerous individuals not under his control, among other things. (*Id.*)

## II. ARGUMENT

*Voir dire*, like any other phase of a criminal trial, is subject to a weighty First Amendment right of access. *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 505 (1984); *ABC, Inc. v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004). The Supreme Court and the Second Circuit have underscored both the importance of the jury selection process itself and the value of its openness. *Voir dire* is not ancillary to a trial but a central component of it, both "to the adversaries [and] to the criminal justice system." *Press-Enterprise*, 464 U.S. at 505. And "except in rare circumstances[,] openness preserves, indeed, is essential to, the realization of that right and to public confidence in the administration of justice." *Stewart*, 360 F.3d at 105-06; *see also United States v. Shkreli*, 260 F. Supp. 3d 257, 259-60 (E.D.N.Y. 2017) ("Press coverage of *voir dire*, no less than coverage of opening statements or the cross examination of a key witness, contributes to the fairness of trials."). Thus, "since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown." *Press-Enterprise*, 464 U.S. at 505.

Any restrictions on access to *voir dire* proceedings must, therefore, meet the stringent standard for closure under the First Amendment. That is, the "district court must make specific, on the record findings demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005) (alteration and internal marks omitted); *United States v. King*, 140 F.3d 76, 82 (2d Cir. 1998) ("[P]ublic access to jury *voir dire* questioning may [not] be routinely or even occasionally limited by the mere possibility that public questioning might inhibit the candor of the *voir dire* responses."). The court must provide the public with notice before it closes a proceeding, *id.* at 192, and its findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered," *Stewart*, 360 F.3d at 98 (quoting *Press-Enterprise*, 464 U.S.

---

[2] Alan Feuer, *El Chapo May Not Have Been Leader of Drug Cartel, Lawyers Say*, New York Times (June 26, 2018), https://www.nytimes.com/2018/06/26/nyregion/el-chapo-leader-drug-cartel.html.

at 510). And in considering whether its order is narrowly tailored, the court must assess whether there are "reasonable alternatives to closure" that would adequately protect countervailing interests. *Id.* at 99. The burden on the party seeking to restrict access to *voir dire* is, in a word, "heavy." *Shkreli*, 260 F. Supp. 3d at 260 (quoting *Stewart*, 360 F.3d at 106).[3]

Here, The Times respectfully submits that the Court's proposal to conduct *voir dire* proceedings in chambers, entirely outside of the view of the public and press, does not comport with the First Amendment. From a constitutional perspective, a *voir dire* examination in chambers is no substitute for one in open court. *See Alcantara*, 396 F.3d at 202 (conducting plea and sentencing proceedings in judge's robing room "infringed on the First Amendment right of access of the public and press"); *see also United States v. Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) ("[A] judge's robing room is not open court."). That would be true even if the Court agreed to later make a transcript of the proceeding available to the public: "The ability to see and to hear a proceeding as is unfolds is a vital component of the First Amendment right of access—not, as the government describes, an incremental benefit." *Stewart*, 360 F.3d 90, 99 (2d Cir. 2004); *see also Alcantara*, 396 F.3d at 202 ("Where a right of access exists, a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available. Such a transcript would not fully implement the right of access because some information, concerning demeanor, non-verbal responses, and the like, is necessarily lost in the translation of a live proceeding to a cold transcript.") (internal marks and alterations omitted). The harm from closure of court proceedings – including to the public's confidence in the administration of justice – is compounded where, as here, the public has an intense and legitimate interest in the trial.

The public record does not show basis for the Court's determination that closure is permitted under the First Amendment. The Times understands the safety concerns that the Court acknowledged in its February 5 ruling, and challenges neither the Court's factual findings therein nor the measures it imposed to protect the safety of jurors. But The Times respectfully submits that precisely because of those prior measures, an open *voir dire* is unlikely to jeopardize juror safety. And to the extent that the Court is concerned about juror candor and privacy, those interests can be accommodated by means short of wholesale closure of the *voir dire*. For example, the Court may hold *voir dire* examinations in open court but permit discussions *in camera* or at a sidebar whenever warranted. *See, e.g.*, *Stewart*, 360 F.3d at 105 n.5; *Shkreli*, 260 F. Supp. 3d at 263 (granting "pool reporter"[4] access to sidebar conversations with jurors, but noting that "[t]he court may temporarily excuse the pool reporter when a juror so requests or when the court determines that the reporter's presence is inhibiting a juror's willingness to speak

---

[3] Though the Second Circuit has once upheld the total closure of *voir dire* proceedings, it did so in "highly unusual circumstances" not present here. *See King*, 140 F.3d at 82-83 (concluding, "[i]n light of the widespread and largely negative publicity concerning [the defendant] and the racial tensions heightened by some aspects of that publicity," juror candor on the subject of racial bias was imperative and warranted district judge's closure of *voir dire*).

[4] "The term pool reporters refers to 'a small number of reporters who have access to news sources and pass information to other journalists.'" *Stewart*, 360 F.3d at 95 n.1 (quoting Oxford English Dictionary (2d ed. 1999)).

frankly on controversial or personal issues"); *United States v. Pirk*, 284 F. Supp. 3d 445, 451 (W.D.N.Y. 2018) (concluding "that it would not be appropriate to conduct individual *voir dire* in chambers," and instead inviting "prospective jurors to discuss any sensitive or personal matters at sidebar and otherwise allowed the individual *voir dire* proceedings to remain open to the public").[5]

## III. CONCLUSION

For the foregoing reasons, The Times respectfully requests access to the *voir dire* in Mr. Guzmán's trial, or alternatively, that the Government and Mr. Guzmán be required to demonstrate that closure of the *voir dire* is warranted. If they seek to do so, The Times respectfully requests an opportunity to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

David E. McCraw

cc: All counsel of record (via e-mail)

[5] If the Court nonetheless concludes that there is a factual basis for holding *voir dire* in chambers, The Times requests that it consider a pool-reporter arrangement to protect the public's right of access. *See, e.g.*, *Shkreli*, 260 F. Supp. 3d at 264 (granting pool reporter access to *voir dire* sidebars); *United States v. Tsarnaev*, 2015 WL 631330, at *1 (D. Mass. Feb. 13, 2015) (permitting pool reporters to be present during *voir dire*); *United States v. Mitchell*, 2010 WL 4386915, at *10 (D. Utah Oct. 29, 2010) (same).