The New York Times Company

RECEIVED
HON. Brian M. Cogan
OCT 29 2018

**David McCraw**
**Vice President &**
**Deputy General Counsel**

620 Eighth Avenue
New York, NY 10018
tel 212.556.4031
fax 212.556.4634
mccraw@nytimes.com

October 24, 2018

**VIA FEDERAL EXPRESS**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Beltran-Levya, et al.*, 09-cr-466 – Access to *Voir Dire*

Dear Judge Cogan:

I write on behalf of The New York Times Company ("The Times") regarding the parties' responses to The Times's request for access to *voir dire* in the upcoming trial of Joaquín Guzmán Loera. The Times set out its arguments and specific proposals for access in letters dated October 2 and 15, 2018. Dkt. Nos. 345, 371. In a letter dated October 22, the Government requests that press access to the *voir dire* be limited to a video feed observable by a single pool reporter. Dkt. No. 383 ("Gov't Letter"), at 1. Mr. Guzmán agrees that access should be confined to video, but not to "a single media representative." Dkt. No. 385 ("Guzmán Letter"), at 2.

These restrictions are unwarranted. To be clear, video access to the *voir dire* is no substitute for physical presence in the courtroom. No matter its quality, a video cannot capture the full experience of personally observing the Court's questioning and the venirepersons' responses. *Cf. United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001) ("[V]irtual reality is rarely a substitute for actual presence and . . . even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it."). And as a practical matter, the camera will be focused on the venireperson, meaning the video feed will be

unable to show the reactions and conduct of the other people at the *voir dire* – Your Honor, the lawyers, and others in the courtroom. Video access unduly restricts the ability of reporters to cover the *voir dire* fully.

More to the point, exclusion of the press from the courtroom is unnecessary. The Government insists, notwithstanding the anonymity and partial sequestration of the jury, that closure of the *voir dire* is needed for juror safety. Gov't Letter at 7. It is hard to see why.[1] This Court will presumably instruct potential jurors during *voir dire* – as it did in the questionnaire, *see, e.g.*, Dkt. 330 at 6 – not to disclose identifying information as they answer the Court's questions. If the Court needs to elicit such information from a juror, it can do so at a sidebar away from most of the press, and the juror's answers can be redacted from the transcripts before they are released publicly.[2] What closing *voir dire* to the press would add to juror safety in these circumstances is unclear. The Government points out that jurors may have security concerns when they learn that the case involves allegations of murder, assault, kidnapping, and torture (Gov't Letter at 7), but that will be so whether the press is present or not. If anything, the presence of others in the courtroom helps assure the venirepersons that this case is being handled in the same way as other criminal cases in this country – openly, publicly, and safely thanks to the trust we all have in the judicial system and the law.

The need for juror candor does not justify closure, either. The prospective jurors will already be sensitive to the high-profile nature of the trial – and the fact they are "under scrutiny," Gov't Letter at 7 – from the anonymity of the jury, level of physical security, and description of the case that will be relayed to them. The notion that they would be intimidated by a small number of press in the jury box is implausible. Moreover, this is not the rare case that presents the "socially polarizing issues" warranting closure of *voir dire*. *See id.* at 6 (quoting *ABC, Inc. v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004)); *United States v. King*, 140 F.3d 76 (2d Cir. 1998). The Government observes that the prospective jurors will be asked about their opinions on "drug policy" and "international drug cartels," as well as their "personal views about persons of Mexican descent such as the defendant." *Id.* These are more akin to the questions asked in routine drug prosecutions than the highly sensitive and racially charged issues that arose in the *King* case. And, again, to the extent those questions make any given juror uncomfortable, The Times's proposal would allow questioning to take place at a sidebar.

Ultimately, the proponent of closure must overcome the heavy burden imposed by the First Amendment. *Stewart*, 360 F.3d at 106. The parties have not done so here. The fact that this case has been the subject of "intense media coverage" is simply not sufficient to warrant exclusion of the press. *See id.* at 102 ("To hold otherwise would render the First Amendment right of access

---

[1] Also puzzling, as Mr. Guzmán points out (Guzmán Letter at 1), is the Government's proposal that video access be limited to a single pool reporter. A pool reporter is deployed in circumstances where the presence of the full press would be disruptive or otherwise impractical. If access to the *voir dire* is limited to video, a pool-reporter arrangement is unnecessary.

[2] Indeed, the Government itself requests that the Court take these same precautions. *See* Dkt. No. 383 at 6 n.4.

meaningless; the very demand for openness would paradoxically defeat its availability."). Indeed, in cases like this one, the presence of the press can have a salutary effect on juror candor, because the "knowledge that reporters are present probably discourages fabrication and ensures honesty on the part of venirepersons." *Id.*[3]

For these reasons and those previously stated, The Times requests that *voir dire* be conducted in open court, in the fashion proposed in its October 15 letter.[4] As always, counsel for The Times is available to discuss these matters at the Court's convenience.

Respectfully submitted,

David E. McCraw

cc: All counsel of record (via e-mail)

[3] The decision in *In re Greensboro News Co.*, 727 F.2d 1320 (4th Cir. 1984), which the Government relies upon, is not just factually inapposite – jurors were not anonymous, giving rise to a more credible "fear that honest responses would subject them to retribution," *id.* at 1325 – it is also understood as having "limited persuasive force." *Stewart*, 360 F.3d at 104 ("[T]he Fourth Circuit's initial decision was handed down before [*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984)], and its supplemental opinion, written after *Press-Enterprise I*, did little to incorporate that decision's reasoning.").

[4] Neither the Government nor Mr. Guzmán directly addresses The Times's request that juror questionnaires be made public at the start of *voir dire*.