EASTERN DISTRICT OF NEW YORK
CASE NO.: 09-CR-466 (BMC)

UNITED STATES OF AMERICA,

V.                                    CASE NO.: 09-CR-466 (BMC)

JOAQUIN ARCHIVALDO GUZMAN LOERA ;

JAMES SABATINO,
        NEXT FRIEND
REG # 30906-004
ADX FLORENCE
PO BOX 8500
FLORENCE, CO. 81226-8500    )

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 13 2025 ★
BROOKLYN OFFICE

RECEIVED
NOV 13 2025
PRO SE OFFICE

REC'D IN PRO SE OFFICE
NOV 13 '25 PM 1:54

MOTION FOR COURT
TO ACCEPT NOTICE
TO THE COURT AS
"NEXT FRIEND" OF
DEFENDANT JOAQUIN
ARCHIVALDO GUZMAN LOERA

COMES NOW, JAMES SABATINO,
"NEXT FRIEND" OF JOAQUIN ARCHIVALDO GUZMAN
LOERA AND FILES THIS MOTION FOR THE COURT TO
ACCEPT THE ATTACHED NOTICE (MOTION AND AS
GROUNDS SHOWS THE FOLLOWING:

"FEDERAL RULES OF CRIMINAL
PROCEDURE MAKE NO REFERENCE TO A MOTION TO
INTERVENE IN A CRIMINAL CASE, BUT NON-PARTIES
FREQUENTLY INTERVENE IN CRIMINAL MATTERS WHEN
WARRANTED." UNITED STATES V. AREF, 533 F.3D 72,
81 (2ND CIR. 2008) SEE ALSO: UNITED STATES V.
FAIRLARSND 2024 U.S. DIST. LEXIS 85741 (D.
CONN., JULY 15 2024) THE 2ND CIRCUIT COURT OF
APPEALS HELD "(1) A MOTION TO INTERVENE IN A
CRIMINAL CASE IS PROPER, AND (2) THE APPLICABLE
STANDARD OF REVIEW IS ABUSE OF DISCRETION."

— 1 —

Brief at 72-81

## "NEXT FRIEND"

"First a 'next friend' must provide an adequate explanation - such as inaccessibility, mental incompetence, or other disability - why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." Banks as next friend to Guzman V. United States, 2019 U.S. Dist. LEXIS 174687, 2019 WL 13545209, at *1 (S.D.N.Y. Sept. 24, 2019) see also: Whitmore V. Arkansas, 495 U.S. 149, 163-164, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1920)

I respectfully submit that all of the factors for "next friend" status can be met in this case.

## REASONS WHY GUZMAN CANNOT FILE ON HIS OWN BEHALF

To begin, Mr. Guzman, as this court is aware, does NOT speak any english. He has no knowledge of american law and is unable to do any legal research. More importantly, Mr. Guzman does not even fully understand his current situation. He is in complete isolation, with only me to communicate with. Only few staff here at ADX Florence speak spanish and those who do dont communicate with him. For the past year, Mr. Guzman has

-2-

been pleading with just anyone who come by our cells to communicate with his attorney Israel Jose Encinosa. The staff either say they do not understand him or they outright ignore him. Mr. Guzman does not have any understanding of the legal and constitutional implications of the governments actions.

I submit to you that Mr. Guzman does NOT have the capacity to articulate the violations of his constitutional rights to this court.

The court should consider Mr. Guzmans circumstances, he has been in total Isolation since his extradition to the United States. I am the only inmate that he has been able to communicate with in all the years he has been in american prison. For the last 5 years, Mr. Guzman has been prohibited from social communication with ANY other adult. The only communication with the outside the Guzman has is his infrequent and erratic contact with his 2 MINOR daughters.

In the almost 7 years that I have known Mr. Guzman I have seen his mental state rapidly deteriorate. It has gotten to the point that I fear for him. He has trouble concentrating and putting his thoughts in a coherent manner.

I have been in Isolation for a total of 20 + years. I know what it can do to people. By the grace of God I have been able to withstand it, but many don't. It is now worse with considering the extreme Isolation that me and Guzman are under. We are in a special section of the special security unit (SSU) in ADX, known as "The suites". We have NO CONTACT with any other inmate and very limited staff interactions.

Mr. Guzman is unable to appear on his own behalf but to the above

– 3 –

numerous reasons, as this matter deals with the government's illegal prohibition with me communicating with attorney Cucnosa, he is unable to access the court through counsel either.

It is worth noting that attorney Cucnosa can NOT act on his behalf either because he has no contact with him. The U.S. attorney for the eastern district of NY is prohibiting ALL communication between them. I am prohibited under the special administrative measures from communicating third party information to attorney Cucnosa. Attorney Cucnosa has already done a great deal for Mr. Curman without any compensation. Twice attorney Cucnosa flew from Miami to Colorado to visit us, only for the AUSA in this case to cancel it at the last minute.

I am the ONLY person who knows all the facts of what is going on and can articulate it to this court. Mr. Curman does not have the mental or intellectual ability, knowledge or means to adequately address this matter to the court.

## "NEXT FRIEND" IS TRULY DEDICATED TO THE BEST FRIEND OF CURMAN

I have been housed alone with Mr. Curman for over 6 years, both of us only having eachother to speak to. The court can imagine how close 2 people can become who very literally only have eachother for that amount of time. I have been with him from when we first arrived at ADX, helping him become acclimated to the harsh conditions of ADX and especially here in the ADX, we went through serious together (we both contracted covid-19 at the same time), so I

—4—

being there for him through the difficult time of the passing of his mother and the arrest of his sons.

Because of my genuine concern for Guzman I helped him obtain my attorney Jeffrey J. Guerra. To the world Guzman is "El Chapo" the cartel leader, as I am "Jimmy Guerra" the mobster, but to each other we are brothers who have been placed together in these harsh and unprecedented circumstances. Regardless of our crimes, we are human. Thus, my honest intention is to help Mr. Guzman. All I am seeking is for this court to be aware that his constitutional right to counsel is being violated and that it DOES have jurisdiction to address it. My ONLY goal is for Mr. Guzman to be able to communicate with his attorney – Mr. Guerra – and then I am out of it. Thus, I submit that I have shown I am "truly dedicated to the best interests" of Mr. Guzman.

<u>THE "NEXT FRIEND"</u>
<u>HAS A SIGNIFICANT</u>
<u>RELATIONSHIP WITH</u>
<u>THE DEFENDANT GUZMAN</u>

The final prong set by the Supreme Court is for the "Next Friend" to show he has a "significant relationship" with "the real party in interest." I think that I have shown that our relationship developed over the past 6+ years is the definition of "significant". As I mentioned, I am the <u>ONLY</u> adult person Guzman has spoken to in a social context for over 5 years. (Prior to that Mr. Guzman was allowed to communicate with his mother and sister, but in 2020 the auth in this case modified the same to prohibit him from that contact.)
                              I can submit to this

court and Mr. Guzman agrees (the court can maybe) that due to the circumstances we are the most significant person in each others lives. I think it is similar to stories over wars of 2 military members that served in battle together. There is no woman on earth that I or Mr. Guzman have spoke to over the past 7 years more than eachother. Thus, I believe that I more than meet the threshold set by the supreme court that all "next friend" must have "some significant relationship with the real party in interest."

## THE DISTRICT COURT IN THIS CASE DOES HAVE JURISDICTION OVER THE MATTER OF COMMUNICATION WITH RETAINED COUNSEL

Respectfully, the district court is wrong to think that jurisdiction to compel the government to allow Mr. Guzman to communicate with attorney Guwosa is in the District of Colorado. The court would be absolutely correct if the complaint was for a social contact or any other condition of the special administrative measures. (sam) But in the matter of communication with (between a defendant and an attorney in front of this court is strictly in the jurisdiction of this court.

To be clear, Mr. Guzman retained attorney Guwosa to represent him in post-conviction matters before this court in this case. attorney Guwosa filed a notice of appearance and an application to appear pro hac vice, which this court granted.

The court should be aware that the denial of Mr. Guzmans communication

− 6 −

"BEST FRIEND" OF MR. GUZMAN;

2) THIS COURT ORDER ALL GOVERNMENT TO FACILITATE COMMUNICATION BETWEEN MR. GUZMAN AND HIS ATTORNEY OF RECORD IN THIS CASE, ISRAEL JOSE ENCINOSA, ESQ., SPECIFICALLY, THE SUBPOENA'S IN THIS CRIMINAL CASE.;

3) ORDER AN INVESTIGATION INTO THE GOVERNMENT MISCONDUCT ALLEGED IN THE NOTICE TO THE COURT. SPECIFICALLY THE RETALITORY ACTIONS AGAINST MYSELF AND MR. GUZMAN FOR NEVER RETAINING COUNSEL.

10/29/25

DATE

RESPECTFULLY SUBMITTED,

JAMES SABATINO
REG #30906-004
ADX FLORENCE
PO BOX 8500
FLORENCE, CO.
81226-8500

CC: ISRAEL J. ENCINOSA, ESQ.;
ATTORNEY AT LAW
92300 OVERSEAS HWY.
SUITE 302
TAVERNNIER, FL, 33070
(305)-804-6976
ENCINOSALAW@REAGAN.COM

EASTERN DISTRICT...
CASE NO.: 09-CR-00466-BMC

EXHIBIT "AA"

ORIGINAL

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 17 2025 ★

United States of America,

Plaintiff,

BROOKLYN OFFICE

V.

CASE NO.: 09-CR-00466-BMC

Joaquin Archivaldo Guzman Loera,

Defendant.

**1:25-cv-05310-RPK**

**Kovner, J**
**Eichenholtz, MJ**

James Sabatino,

Interested Party

Reg # 30906-004

ADX Florence

PO Box 8500

Florence, Co. 81226-8500

SEP 17 2025

PRO SE OFFICE

NOTICE TO THE COURT

MY NAME IS JAMES SABATINO AND FOR THE LAST 6 YEARS I HAVE BEEN HOUSED AT ADX FLORENCE WITH JOAQUIN ARCHIVALDO GUZMAN LOERA (HEREINAFTER "GUZMAN") I AM WRITING TO ADVISE YOU OF THE RETALITORY ACTIONS THE GOVERNMENT IS TAKING AGAINST GUZMAN AND MYSELF FOR NO OTHER REASON THEN GUZMAN CHOOSING TO RETAIN MY ATTORNEY ISRAEL J. ENCINOSA FOR POST CONVICTION MATTERS IN THIS COURT. I HOPE THAT AS THE PRESIDING JUDGE, ONCE YOU ARE AWARE OF WHAT THE GOVERNMENT IS DOING YOU WILL TAKE WHAT EVER ACTION YOU CAN. I REALIZE THAT CIVIL COMPLAINTS ARE FILED IN THE DISTRICT WHERE THE PRISON IS (BUT I URGE YOU TO INVOKE JURISDICTION BECAUSE THIS RETALIATION IS BEING DIRECTED BY OFFICERS IN YOUR COURT FOR SIMPLY EXERCISING A RIGHT TO AN ATTORNEY.

FOR BACKGROUND, I WAS CONVICTED OF RICO IN THE SOUTHERN DISTRICT OF FLORIDA (UNITED STATES V. SABATINO, CASE NO. 16-CR-20519-JEM) I AM UNDER 2 TYPES OF COMMUNICATION RESTRICTIONS. SPECIAL ADMINISTRATIVE MEASURES IMPOSED BY THE A.G. AND RESTRICTIONS IMPOSED AS A SPECIAL CONDITION OF MY SENTENCE, PURSUANT

— 1 —

to 18 U.S.C. 3582(c). The communication restrictions imposed on me by the U.S. District Court prohibit my association or communication with "all persons inside or outside of prison" except for my mother and my attorney Israel Jose Encinosa. You may be aware of attorney Encinosa, as he recently filed a notice of appearance on behalf of Guzman in this case before your Honor.

I am housed at ADX Florence in a ultra secure section of the "Special Security Unit" (SSU) known as "The Suites". I was alone in "The Suites" until July 2019, when Guzman arrived here. Although it was a technical violation of my court ordered communication restrictions, Guzman was placed with me in "The Suites". At the time, the government claimed that Guzman was placed with me because we have virtually the same restrictions and were unlikely to ever get off them.

Thus, for the past 6 years me and Guzman were together, side by side. I am the only inmate Guzman has been able to communicate with since his extradition to the United States in 2017, as this court is aware, Guzman does NOT speak any english. I do not speak fluent spanish (or finish) but enough that me and Guzman were able to communicate freely. Of course all of our communications are monitored by the FBI.

Obviously, over the years Guzman and I have become very close, almost none of the staff here at ADX spanish, no one explains anything to him. He frequently has phone calls confused, visits confused and other things that have him in a state of confusion. I was the only one who would be able to explain to him what is going on. I was the only one with him during difficult times, such as the death of his mother, just as he was there for me.

Everything was ok until Guzman asked if he could have my attorneys information. Over the years Guzman learns a lot

About Attorney Enciuosa and said the way he he treated me. Guzman wanted attorney Enciuosa to represent him. He then submitted a request to communicate with attorney Enciuosa, this was late last year.

While the request was being processed, attorney Enciuosa filed a motion to modify my communication restrictions to allow me and Guzman to recreate together. (attached to this notice as exhibit "A") This motion was necessary because my court ordered restrictions prohibit me from associating or communicating with any other inmate (attached to this notice as exhibit "B")

As time went by the government did everything in their power to obstruct attorney Enciuosa's communication with Guzman. About 2 - 3 months ago, Guzman wrote a letter to this court to communicate with his now retained attorney, mr. Enciuosa, While his letter was being processed, attorney Enciuosa filed a notice of appearance in this case and finally obtained authorization to communicate and visit with him.

After receiving approval, attorney Enciuosa immediately scheduled a visit with both myself and Guzman at ADX Florence, For some reason Guzman's letter that he sent months earlier finally hit the docket in this court. The media who presumably watches the docket felt the need to report on this.① For whatever reason the news media felt this was newsworthy and the

_____

① Ironically, the media got the story wrong. They misidentified the attorney Guzman was seeking to communicate with as attorney Enciuosa's son, who is also an attorney and has almost the same name. All the media had to do was check Pacer.

-3-

receive made international news. On Monday August 12, 2025 attorney Espinosa wrote the prison to ensure that the visit was still good. The reason why is that by this time, your Honor issued an order "Denying" Guzman's letter, saying it was filed in the wrong district.

Once again the media got it wrong. They reported around the world that this court DENIED attorney Espinosa from communicating or visiting Guzman. Of course this was NOT true and the court just saying that IF Guzman was having a problem with his communications, he should file the complaint in the District of Colorado. The court was not aware that Guzman's letter was significantly delayed by the FBI and by the time it hit the Docket, the communication issues that Guzman were complaining about were resolved.

But because of the incorrect headlines and in an abundance of caution, attorney Espinosa wrote/emailed the ADX legal department to verify the visit was scheduled. On the same day attorney Espinosa received a response assuring him that everything was good. Thus, Mr. Espinosa got on a plane and flew to Colorado.

## EVENTS OF THE MORNING OF 8/13/25

On the morning of August 18, 2025 at about 8:30 ᴬᴹ, BOP staff came to Guzman's cell door. They told him to get ready for his legal visit. I witnessed this. They then placed him in restraints to allegedly take him to the visiting area, which is in another section of ADX. All of this was totally consistent with what would normally

−4−

happen on visiting day. However a few minutes after Guzman left for the visit, I heard the officers request "the suits" and go into Guzmans cell with moving carts. I could then hear a lot of noise that sounded like packing bags. While this was going on, I heard one of the officers radio go off, where another officer was asking for a authorization to "move our inmate" from the SSU to "range 13" which is a section in another part of ADX.

At this point I knew something was wrong. I immediately activated a call button for the officers. When it was responded to, I asked what was going on because I had a legal visit too. The officer said he could not tell me what was going on except that 1) the legal visit was cancelled and 2) this ("whatever was going on") was "much bigger" than anyone at the BOP/ADX. While I was still trying to figure out what was happening a team of officers came into placed me in full restraints (waist chains, handcuffs and black box, and schackles (leg irons). I was placed in an holding room for 2 days until Friday Aug 15, 2025. When I got back to "the suite" Guzman was gone.

I still had no idea what was going on and several officers came to tell me that this was retaliation for me giving "El Chapo" my attorney. I later learned that Guzman was moved to "Range 13" which is a positive unit in another part of ADX. Mr. Guzman is being punished for no other reason than he retained an attorney to help with post conviction matters in this case. This does not make no sense. A high ranking officer at ADX came and told me that "the government" requested Guzman be seperated from me to comply with

-5-

the 3582(4) restrictions in my case. But this also did not add up because we had been together for over 6 years. The government and my sentencing judge was well aware we were together.

I finally got to speak to my attorney on Tuesday Aug. 19, 2025. Attorney Guevara did not know what was going on or why the visit was cancelled, they only told him that there was a "institutional emergency". This was a lie. I promise you that there was NO emergency here at ADX and there was normal operations except for them moving inmates to "Range 13" and placing me in restraints.

Despite this ADX assured attorney Guevara that the issues were now resolved and they scheduled another visit for Aug. 27, 2025. On Aug. 25 attorney Guevara emailed the ADX attorney to confirm the visit was a go, on the same day he was told it was. However on Aug. 26 as he was about to board a plane, attorney Guevara received a last minute email saying the visit was AGAIN cancelled.

From my end, I was approached by a high level ADX (BOP) staff who told me "you and your attorney need to get out of this el chapo business or this is going to keep happening. In fact, it can get a lot worse." I took this to be a threat that if I and attorney Guevara did not stop helping inmates, bad stuff would happen.

THIS COURT SHOULD
HAVE JURISDICTION

I respectfully urge this

-6-

court to consider that this is retaliation by the government for an attorney representing a client in this court. Your Honor should have jurisdiction over actions in your court, the government is purposefully trying, actually obstructing curmen's attorney of choice.

I am putting this on record with the court cause I don't know what to do. I don't care about what the government does to me, I do NOT trust the government or their threats. I can deal with whatever comes my way. But I do fear for curmen. I feel bad for him, as you know, he speaks NO ENGLISH and very few people here speak spanish. I know that he is totally isolated and has no idea what is going on. They stopped attorney curmen's from communicating with him. By them separating him from me, curmen is at the mercy of whatever they tell him.

Respectfully, this court should NOT allow this to happen. The government should not be able to torture someone for hiring an attorney the government does not like. Attorney curmen's is a good man, he has been an attorney of good standing for over 40 years. The only thing they have against him is he also represents me.

They put me in metal restraints for 2 days. My arms and legs still hurt, but I don't care about that. I just ask this court to look into this and make the government explain why they are doing this, me and curmen were together for 6 years.

I know this court will take my suggestions seriously. I don't

—7—

more than likely. I was placed in metal restraints for 2 days (my hands and arms still hurt), Guzman was moved to a disciplinary range all because he wanted an attorney to represent him in this case.

I struggled with if I should write this letter/notice. The ONLY reason I opted to do so is because I honestly fear for Guzman. As I said, I can deal with the government and their tactics. But Guzman has no idea what is going on. They are honestly torturing him, they are retaliating against us for legal representation. My only "crime" was giving Guzman my attorney's information. Am I wrong or is it not a constitutional right to retain an attorney of your choice? We did everything the right way. What I mean by that is Guzman filled out a request to retain Mr. Guzman and get him approved. We did not circumvent the communication restrictions. For this I was physically left in restraints and I don't know how Guzman's condition.

I am a fighter Judge Cogan, I will deal with whatever the government tries to do. This is not about me, this is about Guzman, no one should be retaliated against for retaining an attorney. I am cc'ing a copy of this notice to attorney Window and the government will receive a copy. In the event the government tries to retaliate against me, I will be fine.

I don't know what you can do. But from what I understand of the law you have jurisdiction of the parties in your court. Again this was done because Guzman wanted to hire an attorney to represent him for post conviction matters in THIS COURT, surely you have jurisdiction to order the government

to explain why they are retaliating in this way. maybe you can refer this to someone for investigation. most importantly you can order proof that curman is ok. I know what they did to me and I can only imagine what they did to him. also, the government has now stopped curman from any communication with attorney ncnosa. this is not right Judge cogan, I hope you will look into these allegations.

                                    Respectfully submitted,


                                    James Sabatino
                                    Reg # 30906-004
                                    ADX Florence
                                    Po Box 8500
                                    Florence, Co.
                                                81226-8500

CC: Israel Jose Encinosa
    Attorney at Law
    92300 Overseas Hwy,
    Suite 302
    Tavernier, FL. 33070
    305-804-6976
    EncinosaLaw@Reagan.com

                                    -9-

$E X H I B I T \ \text{``} A \text{''}$

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-20519-CR-JAL

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JAMES SABATINO,

      Defendant.

_____/

### MOTION TO MODIFY COMMUNICATION RESTRICTIONS PURSUANT TO 18 U.S.C. § 3582(e) TO ALLOW THE DEFENDANT TO RECREATE WITH JOAQUIN GUZMAN

COMES NOW the Defendant, JAMES SABATINO, by and through the undersigned attorney and in support of this Motion states as follows:

### BACKGROUND

On June 30, 2016 a Grand Jury in Miami, Florida returned a fourteen count Indictment against the Defendant and others charging them with conspiracy to violate the Racketeer Influence and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d); Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349; and numerous counts of Mail Fraud. [DE:3]

$E X H I B I T \ \text{``} A \text{''}$

Thereafter, a Superseding Information was filed charging Sabatino with 29

offenses including those listed above. [DE:214]

According to the Stipulated Factual Proffer, the charges arose from Mr.

Sabatino, known to law enforcement as a member of the Gambino Organized

Crime Family of La Cosa Nostra ("LCN") and being the sole organizer and leader

of a prison-based enterprise that is associated with the Gambino Family of LCN.

The enterprise engaged in acts of Mail and Wire Fraud, Interstate Trafficking of

Stolen Property, Obstruction of Justice, Introduction of Contraband into Federal

Prisons, Witness Intimidation, Bribery, Conspiracy to Commit Murder and other

criminal activities in the Southern District of Florida, Southern District of New

York and the Northern District of Georgia. [DE:231:2-2]; [DE:286:5-6]

While incarcerated Sabatino obtained a series of cellular telephones, which he

acquired from federal correctional officers. Through the use of these telephones,

visits and other inmates, Sabatino and other members of the enterprise conducted

regular meetings by telephone, in person or by other means of communication,

during which they planned, and otherwise engaged and discussed, criminal

activities, including Fraud, Interstate Trafficking of Stolen Property, Introduction

2

of Contraband into Federal Prisons, Bribery, Obstruction of Justice, Witness Intimidation and Murder. [DE:231:5-6]

During the course of the racketeering conspiracy, Sabatino repeatedly communicated with members and associates of the Gambino Organized Crime Family of LCN and directed them to threaten violence and murder those who posed a threat to him or the enterprise or jeopardized its operations, including witnesses to the illegal activities of the enterprise. [DE:231:3, 6-7, 10-11]

From his prison cell, Sabatino recruited a number of other individuals, including other inmates, federal corrections officers and non-incarcerated co-conspirators to participate and carry out those activities.[DE:231:3-11] Despite the fact that Sabatino was incarcerated, members and associates of the enterprise were willing to follow his orders and directives. As a result, Mr. Sabatino was able to orchestrate the theft of over $10,000,000.00 worth of jewelry during a two-month period. [DE:231:3-11]

In the Plea Agreement and Stipulated Letter of Understanding, Sabatino agreed to plead guilty to Count-1 of the Superseding Information, to the RICO conspiracy. [DE:230:1] [232:1] Sabatino also agreed to the Government filing a Motion pursuant to 18 U.S.C. § 3582(e) for Special Conditions of Confinement, to wit:

3

3(a). The Defendant be prevented from communicating with anyone other than his step-mother, Carol Fardette, undersigned counsel, Joseph S. Rosenbaum, and paralegal Kimberly Acevedo during the term of his imprisonment.

3(b). The Defendant be prevented from communicating with other inmates during the term of his imprisonment; and

3(c). These conditions continue until such time as the Defendant unequivocally demonstrate he will not threaten or do violence and/ or physical harm to other persons. [DE:232:1]

Sabatino agreed to these terms to ensure at minimum the Government would not attempt to prevent him from communicating with his step mother, Carol Fardette, Attorney Joseph S. Rosenbaum, and paralegal (Now attorney) Kimberly Acevedo. Mr. Sabatino understood and acknowledged that due to his current charges, as well as his extensive history of continuing criminal activity from prison, that the Government would seek communication restrictions. The purpose of the plea was for the Government to acknowledge that Sabatino would be able to communicate with the above named persons. It was Sabatino's understanding that this was the minimum and that he could at any time seek to add an additional person to his approved communication list, so long as there was no probable cause to believe that communication with said additional person would enable Sabatino

4

Case 1:25-cv-00466-BMC-RLM   Document 1   Filed 05/27/25   Page 14 of 30 PageID #: 14
Case 1:25-cv-00310-BMC-RLM   Document 77-5   Filed 05/27/25   Page 21 of 37 PageID #: 19315
Case 1:16-cr-20519-JAL   Document 700   Entered on FLSD Docket 03/04/2025   Page 5 of 18

to continue to control his criminal organization or to participate in criminal activity.

At his sentencing hearing, the District Court sentenced Sabatino to 240-months in prison, to run consecutively to the sentences imposed in other Federal and State cases. [DE:287:2] The District Court orally Granted the Government's Agreed Motion Requesting Imposition of Communication Restrictions pursuant to 18 U.S.C. § 3582(d). [DE:269] The District Court entered said Order in which it made specific findings of facts based upon Sabatino's guilty plea to conspiracy to violate the RICO act, the Stipulated Factual Proffer and his extensive criminal history, wherein many of his crimes were committed while in federal custody. [DE:286] While 18 U.S.C. § 3582(e) only authorizes communication restrictions with a "specific person", because Sabatino is a leader of a large national criminal organization, and in accordance with the with the holding of *United States v. Felipe*, 148 F.3d 101, 109 (2nd Cir. 1998) the Court held:

> We do not believe Congress expected sentencing courts to list every individual of a racketeering organization in cases where sufficient reasons exists to believe that association with **any** member is for purpose of participating in an illegal enterprise. Racketeering groups are often large and boast a constantly changing membership. It would be difficult, if not virtually impossible, to identify each and every active member of such an organization. The purpose of 3582(d) "is to prevent the

5

Case 1:25-cv-00531-BM-RLM Document Filed 09/17/25/13 Page 15 of 32 PageID #: 465
Case 1:16-cr-20519-JAL Document 700 Entered on FLSD Docket 03/04/2025 Page 6 of 18
#: 19316

defendant from continuing his illegal activities from his place
of confinement." [Emphasis in original] [DE:286:8 citing
*Felipe* at 110]

Thus, the Court found specifically "that there is probable cause to believe the

Defendant's association or communication with persons other than his stepmother,

his attorneys, or the attorney's staff would enable Defendant to "control, manage,

direct, finance, or otherwise participate in an illegal enterprise'." [DE:286:5]

Again, with the understanding that he could submit names of specific persons with

whom no probable cause existed, Sabatino did not object to the imposition of the

restrictions. The Court then imposed the following restrictions on Sabatino's

communication as part of his sentence pursuant to 18 U.S.C. § 3582(d) in pertinent

part:

> b. Defendant should be limited, within the U.S. Marshals
> Service, (BOP), detention facility's reasonable efforts and
> existing confinement conditions, from having contact,
> (including passing or receiving any oral, written, or recorded
> communications) with any other inmate, visitor, attorney, or
> anyone else, that could reasonably foreseeably result in the
> Defendant communicating (sending or receiving) information
> that could allow the Defendant to circumvent the court's intent
> of significantly limiting Defendant's ability to control, manage,
> direct, finance or otherwise participate in an illegal enterprise;

> c. The restrictions specified above should permit Defendant's
> contacts and communications with the following persons:

6

i.  Carol Fardette, Defendant's stepmother;

ii.  Joseph S. Rosenbaum, Esq., Counsel for the Defendant; &

iii.  Kimberly Acevedo, Esq., Co-counsel for Defendant.

d. The restrictions specified above shall remain in place until the Defendant demonstrates his communication no longer pose a threat.

3. **The Court retains jurisdiction to consider any applications made by the Defendant, Defendant's attorneys, or the Government to modify these special conditions of confinement.** [Emphasis added] [DE:286]

These same restrictions were incorporated into Sabatino's Judgment and Sentence as Special Conditions of Confinement pursuant to 18 U.S.C. § 3582(d). [DE:287]

Subsequent to the Court's issuance of the original Order, Sabatino's restrictions have been modified several times. The most recent modification was on December 18, 2019, which imposed the following restrictions:

a. The Defendant shall be confined during the time of his incarceration so that he is separated from and prohibited from associating or communicating with any other inmate.

b. The Defendant shall be prohibited from communicating with anyone inside or outside of prison except for:

i. Carol Fardette, Defendant's Stepmother

ii. Joseph S. Rosenbaum, Esq., Defendant's Counsel

iii. Kimberly Acevedo, Esq., Defendant's Counsel

iv. Israel Encinosa, Esq., Defendant's Appellate Counsel

7

c. The restrictions specified above shall remain in effect until the Defendant demonstrates his communications no longer pose a threat.

d. All other findings in the Court's order imposing communications restrictions pursuant to 18 USC § 3582(e) (D.E. 286) are adopted herein and shall remain in full force and effect. [DE:576][1]

## ADX FLORENCE

Mr. Sabatino is housed at the Federal Supermax ADX Florence. He is in a special wing of the "Special Administrative Measures" ("SAM") Unit called "The Suites." There are only four cells in the wing; each 12' x 7' cell is equipped with a bed, desk, bathroom, shower, and a separate recreation cage. Sabatino's cell has a camera equipped with night vision and sound, this subjects Sabatino to 24/7 audio and visual surveillance, which is monitored and recorded by both the BOP and the FBI. The only other inmate on the range is alleged Drug Kingpin Joaquin "El Chapo" Guzman. Sabatino is prohibited any contact, association or communication with anyone else in the unit.[2]

He has extremely limited contact with correctional staff. Sabatino is only allowed two social phone calls per month (for 15 minutes) and while he can write letters, as noted his only approved social contact is his step-mother.

---

[1] After the issuance of this modification, the undersigned took over as lead counsel for the Defendant in the District Court. Pursuant to this, the Court terminated the Defendant's communication with attorneys Rosenbaum and Acevedo.

[2] Although Sabatino's communication restrictions prohibit any communication or association with other inmates, Guzman has virtually the same restrictions with the exception that he has several more approved outside social contacts than Sabatino.

Case 1:25-cv-00531-DBM-RLM Document 1-17 Filed 09/07/25/13 Page 18 of 30 PageID #: 45
Case 1:16-cr-20519-JAL Document 700 Entered on FLSD Docket 03/04/2025 Page 9 of 18
#: 19319

Again, Sabatino stresses that he accepted these restrictions and acknowledged they were necessary to prevent him from controlling his criminal organization. Sabatino understood the implications the restrictions would have on his housing conditions when he took the plea.

Mr. Guzman has been housed with the Defendant since his arrival at ADX Florence in 2019. Before Mr. Guzman's arrival at ADX, Mr. Sabatino was alone. Although in separate cells, Mr. Sabatino and Mr. Guzman have communicated freely for over 5 years day and night by talking loudly through the doors. As noted above, all conversations are monitored and recorded visually and audibly by both the BOP and the FBI.

While technically a violation of the Court's 3582(e) restrictions that the Defendant be prohibited from communicating with any other inmate, the Administration at ADX Florence placed Mr. Guzman (with the Government's knowledge and consent) with Mr. Sabatino because they have virtually the same restrictions. Mr. Guzman is also on Special Administrative Measures ("SAM") and not able to communicate with anyone inside or outside of prison except for his two minor daughters and his attorneys. Mr. Guzman has never been able to communicate with any other inmate except for Mr. Sabatino since his extradition to the United States in 2017.

To be clear, the BOP, FBI, DOJ and respective U.S. Attorneys Office have made a conscious decision for Mr. Sabatino and Mr. Guzman to be housed together. The

undersigned attorney is aware that the above agencies know that Mr. Sabatino and

Mr. Guzman regularly communicate[3]. It is undersigned counsel's understanding

that the powers that be, decided that little to no harm can come from allowing this

communication. Both Mr. Sabatino and Mr. Guzman have virtually no

communication with others and are not anticipated to have any communication

with others in the foreseeable future.

## ADX RECREATION

Normally SAM inmates at ADX are permitted to "recreate" with other inmates,

albeit in individual recreational cages. SAM inmates can only "recreate"with other

SAM inmates and those recreation periods must be under video and audio

surveillance. Both Mr. Sabatino and Mr. Guzman are separated from other SAM

inmates in the Special Security Unit in an area called "The Suites", because other

SAM inmates progress through a program and will in all likelihood be released

into general population at some point. In the case of Mr. Sabatino and Mr.

Guzman, there is very little likelihood that either will ever be taken off these

restrictions. By keeping them separate from other SAM inmates, it prevents them

from possibly passing messages to the outside through those inmates that are taken

off SAM restrictions and placed back into the general population.[4]

---

[3] Undersigned counsel has previously been contacted by the FBI to inform him that they were aware that Mr. Sabatino and Mr. Guzman are housed together.

[4] Since the Defendant's arrival in the Special Security Unit (SAM), there have been approximately 8 inmates that have been taken off SAM restrictions and sent to general population.

10

Mr. Guzman and Mr. Sabatino are offered several "recreation" periods a week. The Suites have two recreation cages in the back of the cells. The cages are individual cages, which do not allow physical contact between inmates. The cages are below ground level and are surrounded by 4 walls. The only thing visible from the cages is the sky. Since Mr. Sabatino has been in "The Suites" he has not gone outside to recreate because he is in poor health and when alone in the cages there is nothing to do. It is an empty cage roughly the same size as the cell. Mr. Guzman does go outside in the cage to recreate when allowed in order to get fresh air. However, Mr. Guzman has been unable to interact during recreation with anyone since Mr. Sabatino has been unable to go to recreate at the same time as Mr. Guzman due to Mr. Sabatino's Court Ordered communication restrictions.

It is important to stress that the two cages in "the Suites" are equipped with individual video cameras and audio recording devices. According to the SAMs, the recreation periods must be live monitored by the FBI and the BOP. Any violation of the SAM and/or the Communication Restriction Order would result in the immediate termination of the recreation period and subject the inmate to disciplinary proceedings by the BOP and in the case of Mr. Sabatino, possible sanctions by this Honorable Court for violation of it's Order pursuant to 3582(e).

Lastly, no additional resources would be needed if joint recreation between Mr. Guzman and Mr. Sabatino was allowed. In fact, it would actually take less resources to monitor Mr. Guzman and Mr. Sabatino during joint recreation than if

11

they recreated separately. This Court should be aware that in the other parts of the
Special Security Unit, up to six SAM inmates can recreate in separate recreation
cages at the same time.

## ARGUMENT

The Defendant is aware that this is an extraordinary request, but these are
extraordinary circumstances. Mr. Sabatino acknowledges that as a leader of a
national criminal organization, which he has controlled and directed from prison, it
is a legitimate government interest to keep him separated from other inmates.[5]
Especially since Mr. Sabatino has been influential over other inmates in the past.
The Defendant is also aware of Mr. Guzman alleged status and the initial
reluctance this Court may have in allowing these two individuals to recreate
together. But the fact is that they have been able to communicate for over five
years. These communications have been 100% under video surveillance and voice
recordings.  During the time that Mr. Sabatino has been able to communicate with
Mr. Guzman, neither has violated the terms of the SAMs or the 3582(e)
restrictions.

The circumstances of these two specific inmates are unique. They are both
considered the most restricted inmates in not just the ADX, but in the entire United ·

---

[5] Mr. Sabatino and Mr. Guzman's SAMs state "the BOP may permit the inmate to communicate
with other SAMs inmates orally only during predesignated times, the place and duration to be
set by the BOP. "...[A]ll such predesignated sections maybe monitored and recorded." (SAM
Section 1(c)) The recordings of these sections will be "...[A]nalyzed for indications the inmate is
attempting to pass messages soliciting or encouraging acts of terrorism, violence or other
crimes." (Id) A copy of the SAMs can be provided to the Court upon request.

States. Neither is likely to ever get off of communication restrictions and to communicate with other inmates during the term of their incarceration. All of their communications are monitored except their communication with counsel. Thus, there is no chance that allowing Mr. Sabatino to recreate with Mr. Guzman would pose a risk.

Because of the unique design of ADX Florence, both Mr. Guzman and Mr. Sabatino had to be placed in "The Suites" together. They are the only two inmates in "The Suites" and because of this, they have been communicating with each other for the last 5 years. By granting this request the only thing that would change is that Mr. Guzman and Mr. Sabatino would be able to recreate in their enclosed separate cages during the same period of time.

The Court should note that Mr. Guzman is under SAM communication restriction's only. Thus, Mr. Guzman does not need to ask the court for permission to recreate with Mr. Sabatino. On the other hand, Mr. Sabatino is under SAM restriction and 3582(e) Court Ordered communication restrictions. For this reason, Mr. Sabatino is the only one required to seek Court permission to recreate with Mr. Guzman. The Court should note that the purpose of the 3582(e) restrictions is to prevent the Defendant from being able to "control, manage, direct, finance, or otherwise participate in an illegal enterprise." Because Mr. Sabatino is under video and audio monitoring by the BOP and the FBI 24 hours a day and because all of the civilian communications of both Mr. Guzman and Mr. Sabatino are monitored

as well, there is no chance that these communications would pose a danger under 3582(e).

Mr. Guzman is a 67 year old man, who speaks no English, only Spanish. He has had a very difficult time acclimating to life in ADX and his severe communication restrictions. Mr. Sabatino is fluent in several languages (Italian, Sicilian, Latin and Arabic) and speaks some Spanish. Mr. Sabatino's Spanish is good enough to conduct small talk with Mr. Guzman. In reality, Mr. Guzman has learned a little English from Mr. Sabatino. Most importantly, Mr. Sabatino often serves as a translator between the guards and Mr. Guzman. There are not many Spanish speaking officials at ADX Florence and Mr. Sabatino is often asked to translate for Mr. Guzman.

## PLEA AGREEMENT

The communication restrictions in this case were requested by the Government and imposed by this Honorable Court pursuant to a Plea Agreement and Stipulated Letter of Understanding. [DE:231:232] Per the Agreement, the Defendant agreed not to contest the imposition of the communication restrictions.

In this case, Mr. Sabatino was charged and convicted of being the leader of national criminal organization, and ordering numerous crimes, including murders from his prison cell. In addition, Mr. Sabatino was found to have used his power of association to recruit fellow inmates and their family members into members or associates of his organization. Based on this and Sabatino's history of ordering

14

criminal activities from prison for a number of years, he understood the Government would seek communication restrictions.

For this reason, Sabatino accepted the Plea Agreement that would ensure he would at least be able to communicate with his step mother Carol Fardette as she had no connection to organized crime whatsoever. Because of the extremely unique circumstances of virtually everyone in Sabatino's family and circle being alleged to be involved in the Gambino Organized Crime Family, he accepted the plea to ensure at the least he would be able to communicate with Ms. Fardette. It was understood that if Sabatino could identify someone in the future who would not enable him to commit crimes, he could seek approval to communicate with such person.

The Defendant is not seeking to amend the terms of the Plea Agreement. He continues to acknowledge his communications with most other inmates could enable him to pass messages or directives to others that would allow him to conduct the affairs of his criminal organization. What the Defendant is submitting to this Court is that Mr. Guzman should be exempted from this restriction considering they have virtually the same restrictions and have already been communicating and housed together for over five years. While Mr. Sabatino agrees the housing of Mr. Guzman with him is prohibited by the current Court Order, the BOP, FBI and respective A.U.S.A's have seemed to conclude that due to these

unique circumstances, there is no other reasonable alternative but to house them together.

## MR. GUZMAN JOINS IN THIS REQUEST TO RECREATE WITH MR. SABATINO

Undersigned counsel is now also the attorney for Mr. Guzman.[6] The undersigned has received a letter from Mr. Guzman who conveys that he would very much like to attend recreation with Mr. Sabatino. In fact, Mr. Guzman has repeatedly requested to be allowed to go to recreation with Mr. Sabatino (in separate recreation cages) to the ADX Administration. Mr. Guzman was informed that it is Mr. Sabatino's Court Ordered Communication Restrictions that prohibits this.[7]

The SAM and the BOP Policy explicitly allows for joint recreation. If the Court enters an order modifying Mr. Sabatino's 3582(e) restrictions, the BOP would allow joint recreation in accordance with the SAM monitoring provisions and BOP policy.

## CONCLUSION

The undersigned has sent a copy of this motion to BOP/ADX attorney, **Adam**

---

[6] See Case Number 07-20508-CR-LENARD [DE:231], where the undersigned filed a temporary notice of appearance on behalf of Mr. Guzman.[DE:231]

[7] While the Government has informally allowed the Defendant and Mr. Guzman to be housed together and communicate for the last five years, it would take a modification of the Defendant's 3582(e) restrictions for the BOP to permit joint recreation. Ironically, the only time the two cannot communicate is when one is at recreation.

**Powell** and he has yet to inform the undersigned attorney as to what his position

is regarding said motion.

The undersigned has contacted A.U.S.A., Christopher Brown concerning this

motion and he has informed the undersigned attorney that he objects to the

granting of this motion.

WHEREFORE FOR GOOD CAUSE shown, the Defendant, JAMES

SABATINO, respectfully request that an Order be entered Granting this Motion

and allowing the Defendant to joint recreate with Joaquin Guzman.

Respectfully submitted,

**Encinosa Law, P.A.**
Israel Jose Encinosa, Esq.
8950 SW 74th Court, Suite 2201
Miami, Florida 33156-3181
Tel. (305) 804-6976
Fax. (305) 203-4707
E-mail: encinosalaw@reagan.com

By: /s/ *Israel J. Encinosa*            ,
    Israel Jose Encinosa, Esq.
    FBN 435007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

electronically upon all counsel of record via CM/ECF on this 4th day of March,

2025.

By: *Israel J. Encinosa*,
Israel Jose Encinosa, Esq.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20519-CR-LENARD

UNITED STATES OF AMERICA, )
    Plaintiff, )
       )
v. )
       )
JAMES PETER SABATINO, )
    Defendant. )

## ORDER GRANTING MOTION TO MODIFY COMMUNICATION RESTRICTIONS IMPOSED BY THE COURT'S ORDER (D.E. 286), AS IT RELATES TO COURT APPOINTED COUNSEL ISRAEL ENCINOSA

THIS CAUSE came before the Court on the Joint Motion to Modify the Communication Restrictions Imposed by the Court's Order (D.E. 286) as it Relates to Communication with Court Appointed Counsel Israel Encinosa, and the Court being duly advised of the premises herein, it is hereby, ORDERED AND ADJUDGED that:

1. Joint Motion to Modify the Communication Restrictions Imposed by the Court's Order (D.E. 286) as it Relates to Communication with Court Appointed Counsel Israel Encinosa is hereby GRANTED; it is FURTHER ORDERED AND ADJUDGED that the Court's order imposing communications restrictions pursuant to 18 USC § 3582(e) (D.E. 286) shall be modified as follows:

    a. The Defendant shall be confined during the time of his incarceration so that he is separated from and prohibited from associating or communicating with any other inmate.

    b. The Defendant shall be prohibited from communicating with anyone inside or outside of prison except for:

        i. Carol Fardette, Defendant's Stepmother

        ii. Joseph S. Rosenbaum, Esq., Defendant's Counsel

        iii. Kimberly Acevedo, Esq., Defendant's Counsel

        iv. Israel Encinosa, Esq., Defendant's Appellate Counsel

EXHIBIT "B"

c. The restrictions specified above shall remain in effect until the Defendant demonstrates his communications no longer pose a threat.

d. All other findings in the Court's order imposing communications restrictions pursuant to 18 USC § 3582(e) (D.E. 286) are adopted herein and shall remain in full force and effect.

DONE and ORDERED in Miami-Dade County, Florida this ___ day of December, 2019.

JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

cc:   Warden at UPS Florence ADMAX



Name: J__ __ _LATINO
Reg No: 3_
U.S. Penitenti
P.O. Box 8500
Florence, CO. 81226-8500

CM-20-115

EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT

CLERK

225 CADMAN PLAZA EAST

BROOKLYN, N.Y.

11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 13 2025 ★

BROOKLYN OFFICE