MotleyRice® LLC

ATTORNEYS AT LAW

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000   **f.** 843.216.9450

**John M. Eubanks**
*Licensed in MD and SC*
direct: 843.216.9218
jeubanks@motleyrice.com

July 7, 2026

**VIA CM/ECF**

The Honorable Brian M. Cogan
U.S. District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Miller v. Juárez Cartel*, No. 23-mc-2405 (BMC)
       *United States v. Ismael Zambada Garcia*, Nos. 09-cr-466 (BMC); 25-262 (BMC)

Dear Judge Cogan:

As the Court is aware, Howard J. Miller, individually and as personal representative of the estate of Maria Rhonita LeBaron, *et al.* (the "Families" or "American Victims of Cartel Terrorism"), previously moved this Court *ex parte* for a writ of execution to attach and execute against assets of Defendant Ismael Zambada Garcia ("El Mayo" or the "Defendant"). The Families are the victims of the November 4, 2019, ambush and massacre by the Juárez Cartel a/k/a La Línea in which the Defendant allegedly provided material assistance by supplying men and weapons used to ambush, set on fire, and murder the Families' loved ones. *See, e.g., Miller v. Juárez Cartel,* No. 1:20-cv-132-CRH (D.N.D.), 2022 WL 2288652 (D.N.D. June 24, 2022). The Families obtained a judgment against the Juárez Cartel in 2022, which was duly registered with this Court on September 12, 2023. *See Miller v. Juárez Cartel*, No. 23-mc-2405 (BMC), ECF No. 1.

The Defendant is an alleged agent or instrumentality of the Juárez Cartel. Since 2002, Congress has mandated that "notwithstanding any other provision of law," the blocked assets of a terrorist party (including any agency or instrumentality) "shall be subject to execution or attachment in aid of execution" to satisfy a judgment for compensatory damages based on an act of terrorism. Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, codified at 28 U.S.C. § 1610, note § 201(a). "Blocked assets" include all property seized or frozen under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 18 U.S.C. § 2333(e); 31 C.F.R. § 598.202(a).

The Defendant is a specially designated narcotics trafficker ("SDNT") under the Kingpin Act. *See* 31 C.F.R. §§ 598.313, 598.314; *Letter to Congressional Leaders Reporting Designations Under the Foreign Narcotics Kingpin Act*, Administration of George W. Bush, (May 31, 2002),

July 15, 2026
Page 2

available at https://www.govinfo.gov/content/pkg/WCPD-2002-06-03/pdf/WCPD-2002-06-03-Pg939.pdf.

At the September 11, 2025, hearing on the Families' writ application, the Court stated that it would not sign a preliminary order of forfeiture until the Families had an opportunity to object. *See Miller v. Juárez Cartel*, No. 23-mc-2405 (BMC), Sept. 11, 2025, Tr. at 9:24–10:2. On July 13, 2026, the United States filed a letter and proposed Order of Forfeiture that would preclude precisely that opportunity and bypass the entry of a Preliminary Order of Forfeiture. ECF No. 809.

The proposed Order declares that "[t]he United States alone shall hold title to the monies paid by the defendant to satisfy the Forfeiture Money Judgment" and routes all payments directly to the Asset Forfeiture Section of the United States Attorney's Office for the Eastern District of New York. ECF No. 809-1. The government asserts that third parties, such as the Families, "have no standing to object" because a money judgment is an *in personam* judgment against the defendant "and not an order directed at specific assets in which any third party could have any interest." ECF No. 809 (quoting *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 6 (1st Cir. 2011)).

The Families respectfully submit that the United States is incorrect.

Section 201(a) of TRIA expressly provides that its mandate applies "[n]otwithstanding any other provision of law." The Defendant's consent to the Order in his plea agreement binds only him; it does not—and cannot—waive or override the Families' congressionally conferred right to attach blocked assets of this SDNT to satisfy their terrorism judgment. Any payments made to satisfy the $15 billion forfeiture money judgment that constitute or derive from blocked assets (i.e., property in the United States or within the possession or control of a U.S. person belonging to this SDNT) remain subject to TRIA attachment, regardless of the proposed Order's title-vesting language.

The government's citation to Fed. R. Crim. P. 32.2(b)(2)(A) is incomplete and self-serving. While the rule requires prompt entry of a *preliminary* order of forfeiture "without regard to any third party's interest in the property," the very next sentence, omitted by the government, states: "Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." The government cannot use the first sentence to slam the door on the Families while ignoring the second sentence that expressly preserves their right to establish an interest through ancillary proceedings.

More fundamentally, the government's position is circular. By choosing to proceed solely through an *in personam* money judgment that identifies no specific assets, and by including language in the proposed Order declaring that the United States alone shall hold title to any

July 15, 2026
Page 3

payments received, the government has structured the forfeiture in a way that makes it impossible for third parties to point to a concrete property interest. It then cites that manufactured absence of an identified interest as proof that the Families have "no standing." This bootstrapping cannot be reconciled with Rule 32.2's own text or with TRIA's command that blocked assets of a terrorist party (or its agency or instrumentality) "shall be subject to execution or attachment in aid of execution" notwithstanding any other provision of law.[1] The government's approach to the forfeiture in this case implicitly seeks to avoid any repatriation of funds to victims of the Defendant.

The government's representation that the Defendant—one of the world's most prolific narcotraffickers who has "profited billions of dollars"—has "no identified assets" is also concerning. *See* ECF No. 809; DEA, *Cartels*, available at https://www.dea.gov/cartels. The Plea Agreement requires the Defendant to submit a detailed financial statement to the government "60 business days before the date of sentencing." Plea Agreement ¶ 14. That detained financial statement—with sentencing now only days away—presumably identifies assets, accounts, and sources of funds available to satisfy the $15 billion judgment.

Earlier today, Plaintiffs' counsel conferred with Laura Mantell, an Assistant U.S. Attorney for the Eastern District of New York, and Cody Brooks from the Executive Office of U.S. Attorneys. Counsel was informed that the government does not anticipate any funds being paid by the Defendant by the "Due Date" set forth in the proposed Order of Forfeiture. The government further represented that it has not identified any substitute assets against which the government seeks to move at the present time.

Critically, the government also stated that if the Defendant makes any payments toward satisfaction of the money judgment, it will not provide notice to the Families or any other interested parties. This is precisely the outcome the Families seek to avoid.

---

[1] The circular nature of the government's position permeates the proposed Order of Forfeiture. On the one hand, the proposed Order states, "[a]ll payments made towards the Forfeiture Money Judgment shall be made by a money order, or certified and/or official bank check, payable to the U.S. Marshals Service with the criminal docket numbers noted on the face of the instrument…. The Forfeiture Money Judgment shall be paid in full on or before the date of sentencing (the 'Due Date')." ECF No. 809-1 at ¶ 2. On the other hand, the Defendant is required to "execut[e] any documents necessary to effectuate any transfer of title to the United States", and to the extent the Defendant fails to pay the Forfeiture Money Judgment by the date of sentencing, "the defendant shall forfeit any other property of his up to the amount of the unpaid Forfeiture Money Judgment…." *Id.* at ¶¶ 4-5.

July 15, 2026
Page 4

Again, the notion that one of the world's most prolific narco-terrorists has no known or identifiable assets to satisfy the Forfeiture Money Judgment to which he has agreed raises serious questions—especially where the Defendant's obligation under the plea agreement was to provide a truthful and complete financial statement of assets to the government 60 days in advance of sentencing. While the government characterizes this language as "boilerplate," Plaintiffs believe they are entitled to test the reliability of these representations.

In *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 144–45 (2014), the Supreme Court held that judgment creditors are not required to accept the government's or defendant's representations that no attachable assets exist; they are entitled to post-judgment discovery, after which the district court determines which assets are subject to execution. *See also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207–09 (2d Cir. 2012). The Families respectfully request the same opportunity here.

The Families therefore respectfully request that the Court:

(1) Enter a *preliminary* order of forfeiture (or a modified version thereof) so that sentencing may proceed on July 20, 2026 without delay;

(2) Grant the Families leave to conduct limited discovery, including examination of the Defendant's financial statement required by paragraph 14 of the Plea Agreement and inquiry into any blocked assets or potential sources of payment toward the forfeiture judgment[2];

(3) Direct the government to produce a copy of the Defendant's financial statement to the Families (under seal or appropriate protective order if the Court deems necessary and if such document exists);

(4) Clarify that entry of any preliminary order is without prejudice to the Families' rights under TRIA to attach blocked assets, to renew their writ application, to file a third-party petition or other appropriate motion once substitute assets are identified, or to seek any other relief to which they may be entitled; and

(5) Direct that the Families receive prompt notice of any payments received or substitute assets identified toward satisfaction of the Forfeiture Money Judgment.

---

[2] Following the call with members of the U.S. Attorney's Office, it remain unclear whether the Defendant produced a financial statement as required under paragraph 14 of the Plea Agreement.

**MotleyRice®** LLC
ATTORNEYS AT LAW

July 15, 2026
Page 5


This approach accommodates the Court's and the public's interest in proceeding to sentencing while preserving the Families' statutory rights and the opportunity for meaningful review. The Families stand ready to proceed expeditiously with any discovery or briefing the Court may order.

We appreciate the Court's time and continued attention to this important matter. Should the Court have questions, Plaintiffs' counsel intends to be present at sentencing on Monday, July 20, 2026.

Respectfully submitted,

John M. Eubanks